## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HLFIP HOLDING, INC. d/b/a SMART
COMMUNICATIONS IP HOLDINGS,

     *Plaintiff*,

     v.

YORK COUNTY, PENNSYLVANIA;
YORK COUNTY PRISON; and CLAIR
DOLL, *in his official capacity as York
County Prison Warden*,

     *Defendants*.

Civil Action No. 1:20-CV-00186

(Judge Conner)

## BRIEF IN SUPPORT OF MOTION FOR JUDGMENT
## ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. § 101

## TABLE OF CONTENTS

INTRODUCTION ................................................................... 1

STATEMENT OF QUESTION INVOLVED ............................... 2

BACKGROUND .................................................................. 2

    A.    Procedural history .............................................. 2

    B.    Statement of facts ............................................. 2

LEGAL STANDARD............................................................ 8

ARGUMENT..................................................................... 10

    I.    *Alice* Step One: The '617 patent claims are directed to a patent-ineligible method of organizing human activity. ..............................10

    II.    *Alice* Step Two: The claims do not contain an inventive concept, considered individually or as an ordered combination, because they simply implement the ineligible concept using generic computer components and techniques...................................17

    III.    The claims are closely analogous to those found ineligible for patenting in prior Federal Circuit cases. ...........................................19

CONCLUSION ................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) ...................................................................10, 13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) .........................................................................*passim*

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) .........................................................................9

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) .......................................................11, 16, 18

*CardioNet, LLC v. InfoBionic, Inc.*,
  816 F. App'x 471 (Fed. Cir. 2020) ...................................................................10

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
  776 F.3d 1343 (Fed. Cir. 2014) .........................................................14, 15, 16

*Credit Acceptance Corp. v. Westlake Servs.*,
  859 F.3d 1044 (Fed. Cir. 2017) .............................................................13, 17

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020) ..........................................................9, 10, 16

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) .......................................................................14

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) .................................................................13, 19

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
  955 F.3d 1317 (Fed. Cir. 2020) .......................................................................12

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) ..........................................................9, 10, 11

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
711 F. App'x 1012 (Fed. Cir. 2017) ..........................................................14, 15

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
850 F.3d 1315 (Fed. Cir. 2017) ..........................................................17, 18, 19

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ....................................................14, 17, 19, 20

*In re Jobin*,
811 F. App'x 633 (Fed. Cir. 2020) ..................................................................16

*Knopick v. Downey*,
963 F. Supp. 2d 378 (M.D. Pa. 2013) ...............................................................8

*Mgmt. Sci. Assocs., Inc. v. Datavant, Inc.*,
2020 WL 7771156 (D. Del. Dec. 30, 2020) ....................................................17

*Preservation Wellness Techs. LLC v. Allscripts Healthcare Solutions*,
2016 WL 2742379 (E.D. Tex. May 10, 2016) .................................................12

*Return Mail, Inc. v. U.S. Postal Service*,
868 F.3d 1350 (Fed. Cir. 2017), *rev'd on other grounds*,
139 S. Ct. 1853 (2019) ......................................................................16, 20, 21

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017) ..........................................................10, 12, 13

*Sikirica v. Nationwide Ins. Co.*,
416 F.3d 214 (3d Cir. 2005) .............................................................................8

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ..................................................................10, 18

*SkillSurvey, Inc. v. Checkster LLC*,
178 F. Supp. 3d 247 (E.D. Pa. 2016)...............................................................12

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019) ..................................................................21, 22

*Symonies v. McAndrew,*
    416 F. Supp. 3d 377 (M.D. Pa. 2019)..................................................................8

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) ..........................................................................16

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.,*
    916 F.3d 1363 (Fed. Cir. 2019) .........................................................................2

*Versata Dev. Grp., Inc. v. SAP Am., Inc.,*
    793 F.3d 1306 (Fed. Cir. 2015).........................................................................18

*Voter Verified, Inc. v. Election Sys. & Software LLC,*
    887 F.3d 1376 (Fed. Cir. 2018)..................................................................11, 17

## Statutes and Rules

35 U.S.C. § 101 .............................................................................................*passim*

Fed. R. Civ. P. 12(c) ...........................................................................................8

## INTRODUCTION

In our patent system, one cannot obtain a patent simply by automating a well-known process using generic computer components and techniques. Under black-letter precedent, claims to "method[s] of organizing human activity" that "merely require generic computer implementation" are ineligible for patent protection under 35 U.S.C. § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 220, 221 (2014).

The claims of the '617 patent fall squarely in this category of ineligible subject matter. The claims recite nothing more than automating a longstanding human activity—receiving, sorting, reviewing, logging, screening, and distributing inmate postal mail—using generic computer components like scanners, terminals, servers, and kiosks and generic computer processes like generating text-searchable documents and tagging electronic files. The patent does not purport to "improve the functioning of the computer itself." *Id.* at 225. Instead, the purported invention is simply to computerize a process that, as the specification admits, correctional facilities have carried out manually for years. '617 patent 3:35–58.

In short, "[t]his is a quintessential 'do it on a computer' patent"—the very sort the Supreme Court and the Federal Circuit have long held invalid under § 101. *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019). The Court should grant judgment in Defendants' favor.

## STATEMENT OF QUESTION INVOLVED

Whether the claims of the '617 patent are invalid under 35 U.S.C. § 101.

## BACKGROUND

### A.   Procedural history

Smart Communications sued Defendants for infringing the '617 patent in February 2020. Dkt. 1. After Defendants answered, Dkt. 7; Dkt. 28, the case was stayed while the parties conducted settlement negotiations. *See* Dkt. 29; Dkt. 30. The Court lifted the stay on December 28, 2020. Dkt. 33. The parties are to submit a proposed schedule by February 16, 2020. Dkt. 45.

### B.   Statement of facts

**1.**      The '617 patent discloses methods "for eliminating contraband in postal mail at a correctional facility." '617 patent Abstract (Ex. A). The specification acknowledges that methods of delivering both physical and electronic mail to correctional-facility inmates were well known at the time of the invention. *Id.* 1:26–29. And the patent describes in detail a prior-art "manual process for processing postal mail" in correctional facilities. *Id.* 3:35–4:7. This manual process involved the facility reviewing and processing the mail, verifying the recipient, searching the mail for contraband (such as pornography or "criminal communication"), and delivering mail that is "appropriate for delivery" to the intended recipient. *Id.* 3:51–58. The specification states that these prior-art methods did "not adequately address the conversion of postal mail to electronic

2

mail for the elimination of any contraband being delivered to prison inmates." *Id.*
1:32–35. (The specification admits, however, that delivering a photocopy of mail
instead of the original was a known method of preventing contraband from
reaching inmates. *See id.* 3:42–44, 4:1–7.)

The basic idea of the purported invention is simple. A facility receives,
reviews, and logs inmate postal mail and uses a scanner to create an electronic
copy of the mail. Assuming the inmate is permitted to access the content, the
facility allows the inmate to access only the electronic copy "on a kiosk or portable
device," meaning that "contraband cannot reach the inmate." *Id.* 1:45–2:8, 4:8–16.

The patent notes that each piece of mail may be "saved electronically" and
associated with identifying information (for example, sender's identity or time of
delivery), which "may allow for the discovery of trends or patterns of mail
delivery." *Id.* 4:29–51; *see id.* 5:9–10 (invention purportedly allows for "improved
record keeping"). "For example, if a specific sender has repeatedly sent postal mail
which contained contraband, any postal mail from that sender may be indicated for
review by a flagging of the scanned copies." *Id.* 7:56–60. And, since the mail is
distributed electronically instead of physically, a "central location" can receive and
process mail for multiple correctional facilities. *Id.* 4:52–62.

In essence, then, the patent proposes automating the previously manual
process of receiving, sorting, reviewing, logging, screening, and distributing

inmate mail to, at most, allow for more secure delivery and better record-keeping.

A comparison of Figure 1 (displaying the prior-art manual process) and Figure 2

(displaying the purportedly inventive automated process) makes this plain. The

inventors simply took the prior-art manual process, employed scanners to create

electronic copies of the mail, and added a "Data Center" to store the information:



The techniques used in this automated process are performed by generic,

off-the-shelf computer components; no inventive computing technology is

disclosed. For example, a generic "scanner station" creates an electronic image of

the mail. *Id.* 6:29–33, 8:65–9:15. The scanned image is uploaded into a "software

system" that allows staff to associate the image with identifying information, and

the information is saved "in a local, remote, or cloud-based data center." *Id.* 6:44–

58. Staff may employ "flags" to "call attention to particular messages." *Id.* 10:12–

13. The inmate can view the electronic image of the mail "via a computer

terminal" or "on a wireless mobile device." *Id.* 7:17–23; *see also id.* 11:13–33. The generic, conventional nature of these components and techniques is evidenced by the fact that the inventors saw no need to describe them in any detail in the specification, instead assuming that skilled artisans will understand those components and techniques and how they work. For example, the patent discloses no inventive code or algorithms used by the scanners, data center, flags, or computer terminals. *See, e.g.*, *id.* 10:47–50 ("one or more high speed scanners (*not illustrated*) may be shared by multiple receiving facility terminals") (emphasis added).

      **2.**     Independent claim 1 is illustrative of the asserted claims. The claim is verbose and its syntax complex, but it describes a simple concept: an automated process for receiving, reviewing, and sorting inmate mail; screening it for contraband; generating and storing a scanned electronic copy of the mail along with associated identifying information; and then distributing the electronic copy to the intended recipient. The claim reads as follows (bracketed numerals added to improve readability):

> A method for eliminating contraband in postal mail for one or more remote correctional facilities comprising,
>
> [1] receiving postal mail at a central facility;
>
> [2] identifying mail information comprising recipient inmate and inmate institution;

[3] identifying an inmate email account and the associated inmate identifier with associated with said inmate;

[4] identifying sender information and recording it in a database containing the inmate identifier;

[5] identifying content information;

[6] associating said sender information and said content information with said inmate identifier;

[7] screening said postal mail for contraband;

[8] scanning said content information and sender information and generating a scanned electronic copy and a text-readable version of said electronic copy wherein said electronic copy and said text-readable version are stored electronically in a database using the inmate identifier as the primary key;

[9] storing an electronic copy of said electronic copy and said text-readable version for electronic transmission to said recipient inmate;

[10] associating a contraband flag with said electronic copy and said text-readable version;

[11] associating said electronic copy and said text-readable version with an access flag, said access flag denies access to said inmate to said electronic copy and said text-readable version based on content or information contained in said electronic copy and said text-readable version;

[12] associating said electronic copy with said inmate email account and the associated inmate identifier;

[13] assigning the electronic copy with an [*sic*] unique identifier;

[14] presenting said electronic copy for review by institution staff;

[15] determining access to said electronic copy by said recipient inmate wherein access may be granted or denied based upon whether contraband was discovered in said postal mail;

[16] displaying said electronic copy of said postal mail to said recipient inmate associated with said inmate identifier on a remote kiosk capable of receiving and sending electronic mail; and

[17] logging the date of receipt and each access to said electronic copy by said recipient or said institution staff, wherein the risk of said inmate receiving contraband in postal mail is essentially eliminated.

*Id.* 12:2–38. Dependent claims 2–12 add minor limitations. For example, claim 3 adds that the contraband consists of pornography, dangerous objects, or criminal communication, and claim 4 adds that the "screening" step involves chemical analysis of the mail. *Id.* 12:46–54. Claim 8 adds that the correspondence is "pre-screen[ed]" for "correspondence from legal counsel." *Id.* 12:66–67.

Claim 13, a system claim, largely mirrors method claim 1. *Id.* 13:13–14:18. Dependent claims 14–17 add minor limitations to that system, such as that the kiosks are connected to the Internet (claim 14) or the kiosks are mobile devices (claim 15). *Id.* 14:19-30.

**3.**     During prosecution of the patent, the Examiner rejected the claims as directed to patent-ineligible subject matter. Ex. B at 3–5. The claims, the Examiner stated, simply "describe[d] an abstract idea of collecting, analyzing, and displaying data/content." *Id.* at 3. And, while the claims "recite[d] some additional elements such as 'associating a contraband flag,' 'presenting electronic copy for staff review,' and 'logging the date of receipt of the electronic copy,'" these elements did not alter the analysis because they were simply "[g]eneric computer

7

components recited as performing generic computer functions." *Id.* at 4.

The applicant then amended the claims to add the limitations indicating that a "text-readable" electronic copy is created, *see* Ex. C, and that the mail may be intended for "one or more remote correctional facilities," *see* Ex. D. The applicant also added additional language concerning "access flags" and "identifiers." *See id.* The Examiner allowed the claims, but did not explain why the addition of those limitations overcame the § 101 rejection. *See* Ex. E.

## LEGAL STANDARD

*Judgment on the pleadings.* Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is appropriate if 'the movant clearly establishes that there are no material issues of fact, and he is entitled to judgment as a matter of law.'" *Knopick v. Downey*, 963 F. Supp. 2d 378, 391 (M.D. Pa. 2013) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)). In deciding a Rule 12(c) motion, the Court may consider "not only the complaint but also the answer and written instruments attached to the pleadings." *Symonies v. McAndrew*, 416 F. Supp. 3d 377, 383 (M.D. Pa. 2019).

*Patent eligibility.* Laws of nature, natural phenomena, and abstract ideas are ineligible for patenting under 35 U.S.C. § 101. *Alice*, 573 U.S. at 216. Courts follow a two-step framework to analyze patent eligibility. *Id.* at 217. The court first "determine[s] whether the claims at issue are directed to one of those patent-

ineligible concepts." *Id.* "[M]ethod[s] of organizing human activity" constitute ineligible abstract ideas. *Id.* at 220. Moreover, a claim directed to a "combination of…abstract-idea categories" is deemed abstract as a whole. *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093–94 (Fed. Cir. 2016).

If, at step one, the claims are directed to an ineligible concept, the court proceeds to step two, where it "consider[s] the elements of each claim both individually and as an ordered combination" to determine whether the claims contain an "inventive concept" that renders the invention patent-eligible. *Alice*, 573 U.S. at 217–18. Claims that simply use generic computer components and functions to carry out "well-understood, routine, conventional activities previously known to the industry" lack an inventive concept. *Id.* at 225.

Patent eligibility "is an issue of law that sometimes contains underlying issues of fact." *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020). Specifically, the question "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367–68 (Fed. Cir. 2018).

However, because the patent itself will often demonstrate that the claims involve only well-understood, routine and conventional activity, the Federal Circuit has "repeatedly recognized that in many cases it is possible and proper" to

determine patent eligibility on the pleadings. *FairWarning*, 839 F.3d at 1097; *see CardioNet, LLC v. InfoBionic, Inc.*, 816 F. App'x 471 (Fed. Cir. 2020) (affirming grant of judgment on the pleadings of invalidity under § 101); *cf. Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (in deciding eligibility, court "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification"). Moreover, in analyzing eligibility, courts may take judicial notice of "fundamental economic concepts and technological developments." *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016).

Similarly, courts may determine patent eligibility prior to claim construction, particularly where claim construction does not "affect the [patent-eligibility] analysis." *Elec. Commc'n*, 958 F.3d at 1184; *accord Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020). That is the case here: the claims use ordinary language and do not require construction for purposes of the § 101 inquiry.

## ARGUMENT

### I. *Alice* Step One: The '617 patent claims are directed to a patent-ineligible method of organizing human activity.

Independent claim 1 is directed to an automated process for receiving and sorting inmate mail; generating and storing a scanned electronic copy of the mail along with various associated identifying information; screening it for contraband;

10

and then distributing the electronic version of the mail as appropriate to the intended recipient.[1] The activity of receiving, sorting, reviewing, logging, screening, and distributing inmate mail is a fundamental human practice analogous to those the courts have held ineligible for patenting under § 101. And the claims do not recite any improved computer functionality; instead, they simply add generic computer components and techniques to this well-known practice. The claims are therefore directed to patent-ineligible subject matter.

**A.**    "[M]ethod[s] of organizing human activity" constitute abstract ideas ineligible for patent protection. *Alice*, 573 U.S. at 220. For example, the Federal Circuit has held that a claim "directed to the use of persistent identifiers to implement targeted marketing" was abstract because targeted marketing "is a 'fundamental practice' that dates back to newspaper advertisements." *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887 (Fed. Cir. 2019). Claims directed to "using a marking affixed to the outside of a mail object to communicate information about the mail object, i.e., the sender, recipient, and contents of the mail object" were likewise held directed to an abstract idea.

---

[1] The dependent claims add trivial, non-technical limitations, and system claim 13 simply mirrors the limitations of method claim 1. Accordingly, there is "no distinction between them for § 101 purposes" and claim 1 may be treated as representative. *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018); *see FairWarning*, 839 F.3d at 1096 (system claims that "merely graft generic computer components onto otherwise-ineligible method claims" are ineligible).

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017). So, too, were claims "drawn to a system for maintaining patient records that permits tiered access, including reading and editing, by physicians and patients." *Preservation Wellness Techs. LLC v. Allscripts Healthcare Solutions*, 2016 WL 2742379, at \*7 (E.D. Tex. May 10, 2016) (Bryson, J.).

A similar result is appropriate here. As the specification admits, "[p]ostal mail is a federal right" for correctional-facility inmates, so correctional facilities have employed manual methods for receiving, sorting, reviewing, logging, screening, and distributing inmate mail for years. '617 patent 3:35–58. The claims simply recite an automated version of this longstanding human practice. Thus, like the claims to using markings to communicate information about mail objects in *Secured Mail* and the claims to maintaining and editing patient records in *Preservation Wellness*, these claims are "very much in the mainstream of methods…for organizing human activity that have been held to constitute 'abstract ideas.'" 2016 WL 2742379, at \*7. That is particularly so given that "every aspect of the patented method could be"—indeed, has been—"carried out manually." *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 255–56 (E.D. Pa. 2016); *see Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (processes that "can be performed in the human mind, or by a human using a pen and paper" have "repeatedly [been] found unpatentable").

12

**B.**      "[I]t is often helpful to ask" at *Alice* step one "whether the claims are directed to 'an improvement in the functioning of a computer,' or merely 'adding conventional computer components to well-known business practices.'" *Affinity Labs*, 838 F.3d at 1270 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016)). "[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017). For example, in *Secured Mail*, the court found that claims "generically provid[ing] for the encoding of various data onto a mail object" were directed to an abstract idea. While "[t]he claims state[d] that various identifiers are affixed to a mail object, stored in a database, scanned from the mail object, and retrieved from the database," "[n]o special rules or details of the computers, databases, printers, or scanners [were] recited." 873 F.3d at 910.

The claimed invention here does not improve computer functionality. The recited components and techniques—which include scanners, text-readable electronic copies of letters, electronic flags, remote kiosks, mobile devices, electronic identifiers, and the Internet—are "off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting… information." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). This fact buttresses the conclusion that the claims fail *Alice* step one.

13

**C.**     The '617 patent claims are closely analogous to those previously found directed to abstract ideas. In *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 711 F. App'x 1012 (Fed. Cir. 2017), for example, the court found ineligible claims directed to a "computerized solution" to the "longstanding problem" of "identifying and categorizing illicit files, the possession of which might subject an individual or organization to liability." *Id.* at 1014–15. The court approved of the district court's analogy to "a librarian tasked with marking and removing books containing pornographic material from a library." *Id.* at 1015. "[T]he idea of performing a search to ferret out sources with unwanted material 'based on characteristics' of the source," the court held, is an abstract idea. *Id.* at 1016 (quoting *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313, 1314 (Fed. Cir. 2016)).

Similarly, in *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014), the Federal Circuit confronted claims drawn to "1) extracting data from hard copy documents using…a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory." *Id.* at 1345. The method could be performed by an ATM machine that "recognizes information written on a scanned check" and stores that information in "certain data fields." *Id.* These claims were directed to an abstract idea because "[t]he concept of data collection, recognition, and storage is undisputedly well-

known"—indeed, "humans have always performed these functions." *Id.* at 1347.

"And banks have, for some time, reviewed checks, recognized relevant data such as the amount, account number, and identity of [the] account holder, and stored that information in their records." *Id.* The court further explained that the claims' use of a "scanner" did not save them from abstractness because "the use of a scanner or other digitizing device to extract data from a document was well-known at the time of filing, as was the ability of computers to translate the shapes on a physical page into typeface characters." *Id.* at 1347–48.

The same conclusion is appropriate here. The '617 patent claims the use of a scanner and other generic computer components to implement the abstract concept of receiving, sorting, reviewing, logging, screening, and distributing inmate mail, while filtering it for "unwanted material," *Intellectual Ventures*, 711 F. App'x at 1016—i.e., contraband. "And [correctional facilities] have, for some time," performed these functions manually, *Content Extraction*, 776 F.3d at 1347.[2]

**D.**      Claim 1's expansive language and inclusion of many specific steps does not save it from abstractness. "[P]atent eligibility turns on the content of the claims, not merely on the number of words recited in the claims." *Elec. Commc'n*,

---

[2] The prosecution history suggests that the patentee believed that using a scanner to generate a "text-readable version" of the electronic copy of the mail was inventive. *See, e.g.*, Ex. C (adding this limitation in response to § 101 rejection). That is clearly incorrect in light of *Context Extraction*, which made clear that using "a scanner or other digitizing device to extract data from a document" is not inventive. 776 F.3d at 1347–48.

958 F.3d at 1183. And "even a highly specific method for implementing an abstract idea is…still directed to that abstract idea." *Bridge & Post*, 778 F. App'x at 889; *see In re Jobin*, 811 F. App'x 633, 637 (Fed. Cir. 2020) ("[d]espite its expansive language and its recitation of servers and databases," claim was directed to an abstract "method of organizing human activity"). Put differently, a patent drafter cannot avoid § 101's prohibition on patenting abstract ideas by simply limiting the application of the idea to "a particular technological environment." *Content Extraction*, 776 F.3d at 1348; *see Return Mail, Inc. v. U.S. Postal Serv.*, 868 F.3d 1350, 1370 (Fed. Cir. 2017) ("[W]e have consistently held that claims that are otherwise directed to patent-ineligible subject matter cannot be saved by arguing the absence of complete preemption."), *rev'd on other grounds*, 139 S. Ct. 1853 (2019).

Accordingly, the length and specificity of these claims (and their focus on the environment of correctional facilities) do not affect the § 101 analysis. The claims may be highly specific, but they are nonetheless abstract. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712, 715 (Fed. Cir. 2014) (eleven-step method for "distributing copyrighted media products over the Internet where the consumer receives a copyrighted media product at no cost in exchange for viewing an advertisement" "recite[d] an abstraction").

II.   *Alice* **Step Two: The claims do not contain an inventive concept, considered individually or as an ordered combination, because they simply implement the ineligible concept using generic computer components and techniques.**

Claims that merely "recite the use of general purpose computers" to "carry out the abstract idea" do not contain an inventive concept. *Voter Verified*, 887 F.3d at 1386. But, as explained above, that is all the '617 patent claims do. The claims' use of generic "scanners," "kiosks," "mobile devices," and other conventional computing devices are insufficient to supply an inventive concept. *See Credit Acceptance*, 859 F.3d at 1056. Nor does the claims' recitation of "flags" and "identifiers" supply an inventive concept: as the Federal Circuit has held, employing electronic tags or identifiers to label or categorize electronic information is a "generic computer function[]." *Symantec*, 838 F.3d at 1313, 1315; *accord Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315 (Fed. Cir. 2017); *see also Mgmt. Sci. Assocs., Inc. v. Datavant, Inc.*, 2020 WL 7771156, at *9 (D. Del. Dec. 30, 2020) (claim describing abstract idea of labeling electronic data with a "client tag" lacked inventive concept).

Moreover, the specification's statement that automating the mail-distribution process allows for increased "elimination of contraband" and "improved record keeping," '617 patent 5:4–12—even if true—is irrelevant. Even if the claims make the activity more efficient, they do not improve the computer itself, so they remain ineligible. *See Simio*, 983 F.3d at 1361 (rejecting as unpatentable claims that

17

improved the "experience of a user" but did not improve "the *computer's*
functionality"); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335
(Fed. Cir. 2015) (rejecting as unpatentable claims "directed to price determination"
because they "merely use[d] a computer to improve the performance of that
determination—not the performance of a computer").

    *Bridge & Post* is again instructive. The Federal Circuit found that claims
directed to tagging and tracking communications did not contain an inventive
concept because they "provide[d] only a generalized recitation of standard Internet
components and processes which highly resemble[d] a physical process of tagging
and tracking that would not be patent eligible in the physical world." 778 F. App'x
at 893. Just so here: the '617 patent claims recite standard computer components to
receive, sort, review, log, screen, and distribute inmate mail in a process that
"highly resembles" the manual processes that correctional facilities have long
employed.

    *Intellectual Ventures v. Erie Indemnity*, 850 F.3d 1315, is also on point. The
claims there recited methods of creating and searching databases using "tags and
metafiles to locate the desired information." *Id.* at 1327. The Federal Circuit
observed that "organizing and accessing records through the creation of an index-
searchable database[] includes longstanding conduct that existed well before the
advent of computers and the Internet." *Id.* And the claims contained no inventive

18

concept because the remaining limitations simply "recite[d] routine computer functions." *Id.* at 1329. So too here. Receiving, sorting, reviewing, logging, screening, and distributing inmate mail is a longstanding human practice that existed well before computers were available, and the patent simply automates that practice via generic computer components and functions.

## III.   The claims are closely analogous to those found ineligible for patenting in prior Federal Circuit cases.

In addressing the eligibility of a given set of claims, courts often reason by analogy, asking whether the claims are similar "to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. This mode of analysis confirms that the '617 patent claims are ineligible.

**A.**   In *Intellectual Ventures v. Symantec*, certain claims recited "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization—in other words, filtering files/e-mail." 838 F.3d at 1313. The court held these claims abstract, noting that "it was [a] long-prevalent practice for people receiving paper mail to look at an envelope and discard certain letters, without opening them, from sources from which they did not wish to receive mail based on characteristics of the mail." *Id.* at 1314. And the claims did not add an inventive concept because they did not "improve the functioning of the computer itself"; instead, they "use[d] generic computers to perform generic computer functions." *Id.* at 1315.

The court likewise found abstract claims "relat[ing] to systems and methods for receiving, screening, and distributing e-mail." *Id.* at 1316. These claims were "directed to human-practicable concepts, which could be implemented in…a brick-and-mortar post office." *Id.* at 1317. "Such mailrooms receive correspondence, keep business rules defining actions to be taken regarding correspondence based on attributes of the correspondence, apply those business rules to correspondence, and take certain actions based on the application of business rules." *Id.* This analogy to a post office "demonstrate[d] that the [claimed] concept [was] well-known and abstract." *Id.* at 1318.

A similar conclusion is appropriate here. The concepts of receiving, sorting, reviewing, logging, screening, and distributing inmate mail can be—and have been—implemented by "brick-and-mortar" correctional facilities for decades, thus demonstrating that the claimed concepts are "well-known and abstract." *Id.* at 1317–18. The claims simply implement these well-known concepts with equally well-known and generic computer technology.

**B.**  *Return Mail* is likewise instructive. There, the claims recited a method for processing undeliverable mail items that involved receiving mail items containing "encoded data" indicating whether the sender wants a corrected address, identifying items subsequently returned as undeliverable, and providing the sender with a corrected address for those addressees. 868 F.3d at 1367–68. This method

20

was abstract because it was a "process[] that can [be], and ha[s] been, performed in the human mind." *Id.* at 1368. The claims "simply recite[d] that existing business practice with the benefit of generic computing technology." *Id.* And they contained no inventive concept because they recited only "routine, conventional activities such as identifying undeliverable mail items, decoding data on those mail items, and creating output data." *Id.*

Here, the patent admits the process of receiving, sorting, reviewing, logging, screening, and distributing inmate mail can be—and has been—performed manually by humans. '617 patent 3:35–58. The claims just add generic computing technology to this existing human practice.

**C.** Finally, in *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161 (Fed. Cir. 2019), the patent claimed a "method of electronically processing checks" that (i) captured data from papers checks, (ii) used the data to process a deposit, (iii) moved the paper checks "elsewhere for scanning," and (iv) matched the image of the check to the data file. *Id.* at 1164. The court held these claims patent-ineligible because they "recite[d] basic steps of electronic check processing," a practice that banks had performed manually for years. *Id.* at 1166–67. And the "remaining elements in the claims, including use of a scanner and computer and routine data-gathering steps," were insufficient as a matter of law "to constitute an inventive concept." *Id.* at 1169.

21

Once again, the same is true here. The claims use generic computer technology to implement basic steps of inmate-mail processing that have been performed by correctional facilities for years. The claims are therefore ineligible under § 101.

## CONCLUSION

The Court should grant Defendants' motion and declare the claims invalid under 35 U.S.C. § 101.

Dated: February 10, 2021                    Respectfully submitted,


By: */s/ Jack M. Hartman*
(signed with permission)
Jack M. Hartman, Esquire
PA ID 21902
Email: ihartman@cgalaw.com
135 North George Street
York, PA 17401
Phone: (717)848-4900
Fax: (717)843-9039
Email: ihartman@cgalaw.com


Michael D. Specht
Uma Everett
Sterne, Kessler, Goldstein & Fox
P.L.L.C.
1100 New York Avenue NW, Suite 600
Washington, DC 20005
(202) 371-2600
mspecht@sternekessler.com
ueverett@sternekessler.com

*Attorneys for Defendants*

23

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Local Rule 7.8(b)(2), I certify that this brief contains 4,909

words and therefore complies with the word-count limitation set forth in that rule.

This figure was calculated using the word-count feature of Microsoft Word.

> */s/ Uma N. Everett*
> Uma N. Everett
> Sterne, Kessler, Goldstein & Fox
> P.L.L.C.
> 1100 New York Avenue, NW
> Washington, D.C. 20005
> Phone: (202) 772-8520
> Facsimile: (202) 371-2540
>
> *Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 10, 2021, a true and correct copy of the foregoing

**Brief in Support of Defendants' Motion for Judgment on the Pleadings of**

**Invalidity Under 35 U.S.C. § 101** was served by electronic mail on the following

counsel of record:

John F. Murphy
JohnMurphy@bakerlaw.com
Baker & Hostetler LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
Telephone: (215) 564-1603
Facsimile: (215) 568-3439

Katrina M. Quicker (pro hac vice)
kquicker@bakerlaw.com
Baker & Hostetler LLP
1170 Peachtree Street, NE, Suite 2400
Atlanta, GA 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734

*Attorneys for Plaintiff*

Kevin P. Flynn (pro hac vice)
kflynn@bakerlaw.com
Baker & Hostetler LLP
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
Telephone: (513) 929-3400
Facsimile: (513) 929-0303

*/s/ Uma N. Everett*
Uma N. Everett
Sterne, Kessler, Goldstein & Fox
P.L.L.C.
1100 New York Avenue, NW
Washington, D.C. 20005
Phone: (202) 772-8520
Facsimile: (202) 371-2540

*Attorney for Defendants*

15919850.8