# EXHIBIT B



**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/153,171 | 05/12/2016 | Jonathan D. Logan | 09529/22093 US | 8656 |

24108       7590       09/27/2018
CARLTON FIELDS, P.A.
Attn: IP Dept.
P.O. BOX 3239
TAMPA, FL 33601-3239

| EXAMINER |
|---|
| TRAN, BAOTRAM |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2433 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/27/2018 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| Office Action Summary | Application No.<br>15/153,171 | Applicant(s)<br>Logan, Jonathan D. | |
|---|---|---|---|
| | Examiner<br>BAOTRAM TRAN | Art Unit<br>2433 | AIA Status<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☑ Responsive to communication(s) filed on <u>05/12/2016</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL**.     2b) ☑ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>1-21</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>1-21</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☑ The drawing(s) filed on <u>See Continuation Sheet</u> is/are: a) ☐ accepted or b) ☑ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
     a) ☐ All     b) ☐ Some**     c) ☐ None of the:
     1. ☐ Certified copies of the priority documents have been received.
     2. ☐ Certified copies of the priority documents have been received in Application No. _____.
     3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date <u>09/29/2016</u>.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

**Continuation Sheet (PTOL-326)** **Application No.** 15/153,171

Continuation of Application Papers 11): 05/12/2016

## Notice of Pre-AIA or AIA Status

1. The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

## DETAILED ACTION

2. This Office Action is in response to the application 15/153,171 filed on 05/12/2016.

3. Claims 1-21 have been examined and are pending in this application. This action is **Non-Final.**

## Priority

4. This application claims the benefit of the U.S. Provisional Application 62/160,054 filed on 05/12/2015. The priority date considered for this application is 05/12/2015.

## Information Disclosure Statement

5. The information disclosure statement (IDS), submitted on 09/29/2016, is in compliance with the provisions of 37 CFR 1.97. Accordingly, the information disclosure statement is being considered by the examiner.

## Drawing Objections

6. New corrected drawings in compliance with 37 CFR 1.121(d) are required in this application because the current drawings *(Figs. 1-4)* are sketched by hand. Applicant is advised to employ the services of a competent patent draftsperson outside the Office, as the U.S. Patent and Trademark Office no longer prepares new drawings. The corrected

Application/Control Number: 15/153,171                                                                                                                                                   Page 3
Art Unit: 2433

drawings are required in reply to the Office action to avoid abandonment of the application. The requirement for corrected drawings will not be held in abeyance.

## Claim Objections

7.   **Claims 18-21 are objected** to because of the following informalities:

- **Regarding claims 18-21;** claims 18-21 recites *"system of Claim 13..."* It's believed that is a typo; It's suggested that the aforementioned limitation be amended to *"system of Claim* **17**"* (emphasis added)

Appropriate correction(s) is required.

## Claim Rejections - 35 USC § 101

8.   35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

9.   **Claims 1-21 are rejected under 35 U.S.C. 101** as being directed to non-statutory subject matter.

**Regarding claims 1 and 17**, claims 1 and 17 recite a method/system for collecting, analyzing, and displaying data/content. The claims reciting the steps of *"receiving a postal mail,"* *"identifying mail information/content,"* *"screening postal mail and storing result electronically,"* *"determine whether the access is granted or denied,"* and *"displaying the electronic copy"* are directed to an abstract idea as the claims describe an abstract idea of collecting, analyzing, and displaying data/content. The concept

described in said claims is similar to the concepts found by the courts to be abstract ideas of collecting, analyzing, and displaying certain results of the collection and analysis *(See Electric Power Group, LLC v. Alstom SA (Fed. Cir. 2016).*

The claims do not include additional elements that are sufficient to amount to significantly more than the judicial exception because the additional elements when considered both individually and as an ordered combination do not amount to significantly more than the abstract idea. It's noted that the claim recites some additional elements such as *"associating a contraband flag," "presenting electronic copy for staff review,"* and *"logging the date of receipt of the electronic copy."* However, said additional elements, taken individually and as a combination, do not result in the claim amounting to significantly more than the abstract idea because *"associating a contraband flag," "presenting electronic copy for staff review,"* and *"logging the date of receipt of the electronic copy."* are recited as performing generic computer content collecting, analyzing, and displaying functions routinely used in collecting, analyze, and display data/content. Generic computer components recited as performing generic computer functions that are well understood, routine and conventional activities amount to no more than implementing the abstract idea with a computerized system. Thus, taken alone, the additional elements do not amount to significantly more than the above identified judicial exception (the abstract idea). Looking at the limitations as an ordered combination adds nothing that is not already present when looking at the element taken individually. There is no indication that the combination of elements improves the functioning of a computer or improves any other technology. Their collecting, analyzing, and displaying functions merely provide

conventional computer implementation. Therefore, the claim is directed to non-statutory subject matter.

**Regarding claims 2-16 and 18-21,** claims 2-16 and 18-21 are also rejected under 35 U.S.C 101 as being directed to non-statutory subject matter for the same reasons addressed above as the claims do not contain any element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself. See *Electric Power Group, LLC v. Alstom SA (Fed. Cir. 2016).*

### *Claim Rejections - 35 USC § 103*

10. The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102 of this title, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

11. This application currently names joint inventors. In considering patentability of the claims the examiner presumes that the subject matter of the various claims was commonly owned as of the effective filing date of the claimed invention(s) absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that was not commonly owned as of the effective filing date of the later invention in order for the examiner to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art against the later invention.

Application/Control Number: 15/153,171 Page 6
Art Unit: 2433

12.  **Claims 1-2 and 4-21 are rejected under 35 U.S.C. 103** as being unpatentable over Shipman, Jr. et al., ("Shipman," US 9,311,627), filed on Oct. 10, 2014, in view of Shapiro (US 2013/0179949), published on Jul. 11, 2013.

**Regarding claim 1**, Shipman discloses a method for eliminating contraband in postal mail for a correctional facility *(Col. 2 – Col. 6; Figs. 1-4)* comprising,

receiving postal mail at a [central] facility; identifying mail information comprising recipient inmate [and inmate institution]; identifying an inmate email account associated with said inmate; identifying sender information; identifying content information; associating said sender information and said content information with said inmate *(Col. 2, lines 14-27, prior to converting the physical mail item to a digital format mail item, the physical mail item may be opened and inspected. The digital format mail item may then be associated with the resident)*;

screening said postal mail for contraband *(Col. 2, lines 2-3, prior to distribution, the orders are inspected by facility staff for potential contraband and sorted by housing unit; Figs. 1-4)*;

scanning said content information and sender information wherein scan results are stored electronically; storing an electronic copy of said scan results for electronic transmission to said recipient inmate *(Col. 2, lines 13-15, an incoming physical mail item addressed or directed to a resident of a controlled-environment facility is received and converted, such as by a processor controlled digital imaging device, to a digital format mail item; see also abstract: physical mail item is converted to a digital format mail item, which is associated with the resident and archived in an electronic database; Figs. 1-4)*;

associating a contraband flag with said electronic copy; associating said electronic copy with said inmate email account *(Col. 5, line 65 – Col. 6, line 19, systems and methods, analysis may be performed on mail correspondence to identify, and/or confirm the identity of, the outside party based on handwriting, word choice, grammar, punctuation, spelling, capitalization, word frequency, or other criteria. In accordance with investigative implementations employing embodiments of the present systems and methods, alerts may be generated based on rules established by the facility whenever a particular inmate receives correspondence, when certain keywords are flagged in received correspondence during a review; identify certain resident characteristics based on the content of mail correspondence such as gang affiliation, suicidal tendencies, escape risk; Figs. 1-4)*;

presenting said electronic copy for review by institution staff *(Col. 2, lines 2-3, prior to distribution, the orders are inspected by facility staff for potential contraband and sorted by housing unit; Col. 6, lines 20-30, application of controlled-environment facility policy and/or procedures to the digital format mail item and/or the physical mail item may result in creating alerts to staff of the controlled-environment facility, identification of characteristics of the resident for investigative purposes, censoring disallowed images or words in the mail message, enforcing limits on the number of mail messages delivered to a resident over a given period of time, routing of the digital format mail item to a controlled-environment staff member for review, and/or the like; Figs. 1-4)*;

determining access to said electronic copy by said recipient inmate wherein access may be granted or denied based upon whether contraband was discovered

in said postal mail *(Col. 2, lines 37-47, systems may also determine whether the resident is allowed to receive the physical mail item, and printing of the digital format mail item for delivery to the resident via a commissary provisioning system may only be carried out in response to a determination that the resident is allowed to receive the physical mail item. Controlled-environment facility policy and/or procedures may be applied to the digital format mail item and/or the physical mail item in response to a determination that the resident is not allowed to receive the physical mail item; Figs. 1-4)*;

displaying said electronic copy to said recipient inmate on a kiosk capable of receiving and sending electronic mail *(Col. 2, lines 29-36, printing of the digital format mail item at a self-service printing station kiosk operated by the resident of the controlled-environment facility; Figs. 1-4)*; and

logging the date of receipt and each access to said electronic copy by said recipient inmate or said institution staff, wherein the risk of said recipient inmate receiving contraband in postal mail is essentially eliminated *(Col. 7, lines 24-42, notifications might be triggered when the receiving resident accesses a kiosk, uses his or her media device adapted or approved for use in the controlled-environment facility; Figs. 1-4)*.

Shipman does not explicitly disclose receiving postal mail at a central facility and identify recipient inmate institution.

However, in an analogous art, Shapiro discloses system/method for secure exchange of digital content wherein postal mail receiving at a central facility and recipient inmate institution is identified *(Shapiro: par. 0046, one aspect of the invention involves delivering and monitoring electronic letters to correctional facility inmates*

*while giving supervisory authorities the ability to screen the incoming mail. This may be achieved by providing a database having an entry for each inmate and having a plurality of fields, wherein the fields include inmate name, correction system identification code, inmate identification code, correction system facility code, wherein the facility code maps to a specific corrections facility; and by scanning an original letter to produce an electronic letter and storing each electronic letter sent to a specific inmate in a relational database management system (RDMS) table, wherein the RDMS table includes fields for inmate name, inmate identification number and lists of corrections facilities).*

Therefore, it would have been obvious to one of ordinary skill in the art <u>before the effective filling date of the claimed invention</u> to combine the teachings of Shapiro with the method and system of Shipman wherein postal mail receiving at a central facility and recipient inmate institution is identified to provide users with a means for improving the process (cost and time) of received and distributed inmates' paper mail *(Shapiro: 0046).*

**Regarding claim 2,** Shipman and Shapiro disclose the method of Claim 1.

The combination of Shipman and Shapiro further disclose postal mail comprises an envelope having said sender information and contents having said content information and further comprising the steps of scanning said envelope and scanning said contents *(Shipman: Col. 5, lines 18-36, process 100, letter 101 sent via the postal service, UPS, Federal Express or other physical mail carrier to a designated address for delivery to a controlled environment facility resident, such as a letter mailed to an inmate of a correctional institution by a friend or family member, is converted to a digital format and associated with the resident at 102. This conversion may be carried out by scanning the*

letter, taking a digital image (photograph) of the letter, and/or the like. The digital format may be a "direct" image file, such as JPEG, TIFF, PNG, or the like).

**Regarding claim 4**, Shipman and Shapiro disclose the method of Claim 1.

The combination of Shipman and Shapiro further disclose wherein said step of screening said postal mail for contraband comprising screening said postal mail for one of a group consisting of pornography, dangerous objects, or criminal communication (Shipman: Col. 5, line 65 – Col. 6, line 19, systems and methods, analysis may be performed on mail correspondence on certain keywords are flagged in received correspondence during a review; identify certain resident characteristics based on the content of mail correspondence such as gang affiliation, suicidal tendencies, escape risk; see also Col. 5, lines 50-59; pictures or images within the mail correspondence may be processed to determine if they contained nudity or other offensive material; Figs. 1-4).

**Regarding claim 5**, Shipman and Shapiro disclose the method of Claim 1.

The combination of Shipman and Shapiro further disclose step of screening said postal mail for contraband comprising performing chemical analysis on said postal mail (Shipman: Col. 5, line 65 – Col. 6, line 19, analysis may be performed on mail correspondence based on handwriting, word choice, certain keywords; Figs. 1-4).

**Regarding claim 6**, Shipman and Shapiro disclose the method of Claim 1.

The combination of Shipman and Shapiro further disclose the step of generating a text-readable version of said electronic copy (Shipman: Col. 5, lines 18-36, process 100, letter 101 sent via the postal service is converted to a digital format and associated with the resident at 102. This conversion may be carried out by scanning the letter, taking a

*digital image (photograph) of the letter, and/or the like. The digital format may be a "direct" image file, such as JPEG, TIFF, PNG, or the like).*

**Regarding claim 7**, Shipman and Shapiro disclose the method of Claim 1.

The combination of Shipman and Shapiro further disclose step of screening the electronic mail for contents wherein the electronic mail may be flagged or access to said electronic copy may be denied to the recipient inmate based on the content or information contained in the postal mail *(Shipman: Col. 2, lines 37-47, systems may also determine whether the resident is allowed to receive the physical mail item, and printing of the digital format mail item for delivery to the resident via a commissary provisioning system may only be carried out in response to a determination that the resident is allowed to receive the physical mail item. Controlled-environment facility policy and/or procedures may be applied to the digital format mail item and/or the physical mail item in response to a determination that the resident is not allowed to receive the physical mail item; Col. 6, lines 20-30, application of controlled-environment facility policy and/or procedures to the digital format mail item and/or the physical mail item may result in creating alerts to staff of the controlled-environment facility, identification of characteristics of the resident for investigative purposes, censoring disallowed images or words in the mail message, enforcing limits on the number of mail messages delivered to a resident over a given period of time, routing of the digital format mail item to a controlled-environment staff member for review; Figs. 1-4).*

**Regarding claim 8**, Shipman and Shapiro disclose the method of Claim 1

The combination of Shipman and Shapiro further disclose email kiosk comprises a portable device *(Shipman: Col. 6, lines 54-58, some correctional facilities allow*

*inmates to have tablet computing devices or the like specifically adapted or approved for use in the facility, which may be used to access email, the Internet, text messages, or the like).*

**Regarding claim 9**, Shipman and Shapiro disclose the method of Claim 1.

The combination of Shipman and Shapiro further disclose email kiosk is a standalone kiosk in a shared access area of a correctional institution *(Shipman: Col. 2, lines 29-36, printing and distribution or provision of the printed digital format mail item may be via printing of the digital format mail item at a printing station located in close proximity to resident housing, meal, recreation, or common areas of the controlled-environment facility, or printing of the digital format mail item at a self-service printing station kiosk operated by the resident of the controlled-environment facility).*

**Regarding claim 10**, Shipman and Shapiro disclose the method of Claim 1.

The combination of Shipman and Shapiro further disclose the step of providing said recipient inmate an option to forward said electronic copy to party outside of said recipient inmate's institution *(Shapiro: par. 0202, an inmate may also compose, and send emails to approved recipients, such emails also subject to review and approval by correctional facility staff).*

**Regarding claim 11**, Shipman and Shapiro disclose the method of Claim 1.

The combination of Shipman and Shapiro further disclose step of providing access to said electronic copy from outside of said recipient inmate's institution wherein said recipient inmate may access said electronic copy after release *(Shipman: Col. 9, lines 51-55, the digital format mail item may be archived, such as to database 314, for later*

*distribution to resident 302, such as following the end of any applicable resident disciplinary period, upon the resident's release from the controlled-environment facility).*

**Regarding claim 12**, Shipman and Shapiro disclose the method of Claim 1.

The combination of Shipman and Shapiro further disclose step pre-screening said sender for correspondence from legal counsel *(Shipman: Col. 5, lines 37-43, information that the facility typically tracks in association with a letter, in accordance with the facility's policies and procedure, and/or information that the facility wishes to track employing the present systems and methods, may be included and/or associated with the digital file (e.g., sender name, sender address, etc.).*

**Regarding claim 13**, Shipman and Shapiro disclose the method of Claim 8.

The combination of Shipman and Shapiro further disclose the step of returning said correspondence to the sender *(Shipman: Col. 6, lines 31-35, at 104 a determination may be made as to whether the mail message is either approved or rejected. If rejected, normal facility policy for rejected mailings may be followed at 105).*

**Regarding claim 14**, Shipman and Shapiro disclose the method of Claim 8 further comprising the step of forwarding said correspondence to the institution housing said recipient inmate *(Shapiro: par. 0202, an email application 4002, executable upon one or both of player 2000 and kiosk 3000, enables an inmate to read email messages from approved senders, the incoming email subject to preapproval by correctional facility staff).*

**Regarding claim 15**, Shipman and Shapiro disclose the method of Claim 1.

The combination of Shipman and Shapiro further disclose further comprising the enabling said institution staff to flag said sender and notifying said institution staff upon

receipt of future correspondence from said flagged sender *(Shipman: Col. 5, line 65 – Col. 6, line 10, analysis may be performed on mail correspondence to identify, and/or confirm the identity of, the outside party based on handwriting, word choice, grammar, punctuation, spelling, capitalization, word frequency, or other criteria. In accordance with investigative implementations employing embodiments of the present systems and methods, alerts may be generated based on rules established by the facility whenever a particular inmate receives correspondence, when certain keywords are flagged in received correspondence during a review, such as at 104, whenever a particular outside person sends mail).*

**Regarding claim 16**, Shipman and Shapiro disclose the method of Claim 1.

The combination of Shipman and Shapiro further disclose the step of said inmate staff printing said electronic copy and delivering said printed copy to said recipient inmate *(Shipman: Col. 7, lines 6-10, if the facility provides commissary through a point-of-sale (POS) "window operation" (109), the mail message may be printed at that location and distributed to the residents serviced by that window, at 110; Figs. 1-4).*

**Regarding claim 17**, claim 17 is directed to a system associated with the method claimed in claim 1; Claim 17 is similar scope to claim 1, and is therefore rejected similar rationale.

**Regarding claim 18**, Shipman and Shapiro further disclose the system of Claim 17 [[13]] wherein said kiosk network is the internet *(Shipman: Col. 6, lines 54-58, some correctional facilities allow inmates to have tablet computing devices or the like specifically adapted or approved for use in the facility, which may be used to access email, the Internet, text messages, or the like).*

> **Regarding claim 19,** claim 19 is directed to a system associated with the method claimed in claim 8; Claim 19 is similar scope to claim 8, and is therefore rejected similar rationale.
>
> **Regarding claim 20,** claim 20 is directed to a system associated with the method claimed in claim 9; Claim 20 is similar scope to claim 9, and is therefore rejected similar rationale.
>
> **Regarding claim 21,** claim 21 is directed to a system associated with the method claimed in claim 6; Claim 21 is similar scope to claim 6, and is therefore rejected similar rationale.

13.    **Claim 3 is rejected under 35 U.S.C. 103** as being unpatentable over Shipman, Jr. et al., ("Shipman," US 9,311,627), filed on Oct. 10, 2014, in view of Shapiro (US 2013/0179949), published on Jul. 11, 2013, and further in view of Maier et al. ("Maier" US 6,463,127), issued on Oct. 8, 2002.

> **Regarding claim 3,** Shipman and Shapiro disclose the method of Claim 1.
>
> The combination of Shipman and Shapiro do not explicitly disclose postal mail is a post card.
>
> However, in an analogous art, Maier discloses system/method for minimum supervision of an offender wherein postal mail is a post card *(Maier: Col. 1, lines 32-38, very low risk offenders may be required to simply mail a postcard or a questionnaire to a supervising authority agency on a periodic basis)*.
>
> Therefore, it would have been obvious to one of ordinary skill in the art <u>before the effective filling date of the claimed invention</u> to combine the teachings of Maier with the method and system of Shipman and Shapiro wherein/to include postal mail is a post card

to provide users with a means for providing different options in mail services *(Maier: Col. 1, lines 32-38)*.

## *Conclusion*

14.     The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

      U.S. Patent Application Publication No. US 2003/0074477.

      U.S. Patent Application Publication No. US 2006/0245559.

15.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to Baotram (BT) Tran whose telephone number is 571-270-1398. The examiner can normally be reached on Mon and Thu 8AM - 4PM.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, Applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jeffrey Pwu can be reached on 571-272-6798. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information

Application/Control Number: 15/153,171　　　　　　　　　　　　　　　　　　　　　Page 17
Art Unit: 2433

about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/BAOTRAM TRAN/
Examiner, Art Unit 2433

/JEFFREY C PWU/
Supervisory Patent Examiner, Art Unit 2433