# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
### HARRISBURG DIVISION

**HLFIP HOLDING, INC. d/b/a SMART COMMUNICATIONS IP HOLDINGS**,

      Plaintiff,

   v.

**YORK COUNTY, PENNSYLVANIA**; **YORK COUNTY PRISON;** and **CLAIR DOLL**, *in his official capacity as York County Prison Warden*,

      Defendants.

CIVIL NO. 1:20-cv-00186-CCC

Judge Christopher C. Conner

**JURY TRIAL DEMANDED**

## PLAINTIFF'S BRIEF IN OPPOSITION OF
## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OF
## <u>INVALIDITY UNDER 35 U.S.C. § 101</u>

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .............................................................................1

II.   BACKGROUND ..............................................................................2

III.  ARGUMENT....................................................................................4

     A.    The Motion neither explains why claim construction is allegedly unnecessary nor proves the conventionality of claimed elements. ...................................................................7

     B.    The claims of the Asserted Patent are drawn to specific systems and methods for eliminating contraband in correctional facilities and overcame known, technical problems in conventional systems to reduce contraband.........................................9

     C.    A claim may be patent eligible if it brings an improvement on existing processes and need not improve the functioning of a computer. .............................................................................16

     D.    Even if the claims of the Asserted Patent are held to be directed to an abstract idea, the claims are limited to specific, inventive systems and methods for eliminating contraband, presenting no danger of pre-emption. .....................................................18

IV.   CONCLUSION................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ........................ 2, 4, 5, 9, 17, 19

*Align Tech., Inc. v. 3Shape A/S*, C.A., 2020 WL 5979353 (D. Del. Oct. 8, 2020).15, 17

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016) .....15

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013) .......4

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016)...............................................................19

*Blackberry Ltd. v. BLU Prods., Inc.*, 2017 WL 5004845 (S.D. Fla. Mar. 27, 2017) 6

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882 (Fed. Cir. 2019) ...............................................................14

*Card Verification Sols., LLC v. Citigroup Inc.*, 2014 WL 4922524 (N.D. Ill. Sept. 29, 2014) ...........................................................6

*CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020) .............. 10, 13

*Celgene Corp. v. Lotus Pharm. Co.*, 2018 WL 6584888 (D.N.J. Dec. 14, 2018).....6

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019)...........................6

*Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014)...........................................................14

*e-Numerate Sol'ns, Inc. v. U.S.*, 149 Fed. Cl. 653 (Fed. Cl. 2020) ..........................8

*Ficep Corp. v. Peddinghaus Corp.*, 2021 WL 254104 (D. Del. Jan. 26, 2021) ......19

*Gemalto SA v. CPI Card Grp. Inc.*, 2017 WL 818665 (D. Col. Mar. 2, 2017).......17

*Intellectual Ventures I LLC v. Erie Indemnity Co.*, 711 F. App'x 1012 (Fed. Cir. 2017) ...........................................................14

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016)...16

*Internet Patents Corp. v. Active Network Inc.*, 790 F.3d 1343 (Fed. Cir. 2015).....10

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372 (Fed. Cir. 2017) ..................................................................................................................3

*Jedi Techs., Inc. v. Spark Networks, Inc.*, 2017 WL 3315279 (D. Del. August 3, 2017) ..................................................................................................................6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012)....... 5, 19

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) ..10, 13

*Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91 (2011) ....................................................5, 6

*MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373 (Fed. Cir. 2019) .............................7, 9

*Return Mail, Inc. v. U.S. Postal Service*, 868 F.3d 1350 (Fed. Cir. 2017) ..............16

*Secured Mail Sol'ns LLC v. Univ. Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) 14, 15

*Slyce Acquisition Inc. v. Syte – Visual Conception Ltd.*, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020) .....................................................................................7, 9

*Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161 (Fed. Cir. 2019) ..............................16

*Thales Visionix Inc. v. U.S.*, 850 F.3d 1343 (Fed. Cir. 2017)..................................10

*Verint Sys. Inc. v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190 (S.D.N.Y. 2016)17

*Vineyard Investigations v. E.&J. Gallo Winery*, 2021 WL 22497 (E.D. Cal. Jan. 4, 2021) ................................................................................................................18

**Statutes**

35 U.S.C. § 101 ........................................................................................................4

35 U.S.C. § 282(a) ...................................................................................................5

**Other Authorities**

79 Fed. Reg. 74618 (Dec. 16, 2014) ........................................................................3

Peter S. Menell, Matthew D. Powers, & Steven C. Carlson, *Patent Claim Construction: A Modern Synthesis and Structured Framework*, 25 Berkeley Tech. L.J. 714, 716 (2010)..............................................................................7

# I.      INTRODUCTION

The U.S. Patent and Trademark Office ("PTO")—the federal agency tasked with granting and issuing U.S. patents—already made an express determination that the claims of U.S. Patent No. 10,291,617 (the "Asserted Patent") recite eligible subject matter under 35 U.S.C. § 101 ("§ 101"). Yet Defendants' Motion asks this Court to second-guess that determination. The Motion, however, presents no justification supporting a conclusion that the PTO incorrectly determined patentability. And it does not point to a change in the law requiring the Court to undo the PTO's prior determination regarding patentability—nor could it, because the case law governing the subject-matter-eligibility analysis has not changed since the PTO issued the Asserted Patent. The Motion retreads old ground in a different venue, hoping for a different outcome.

Similarly—and based entirely on attorney argument—Defendants oversimplify the claimed inventions and ignore the specific language of the claims. The claims are not abstract but instead are directed to a new, improved process of eliminating contraband at correctional facilities. Claim 1, for example, contains *seventeen* distinct claim elements, including scanning aspects of postal mail to generate an electronic copy, generating a text-readable version of the electronic copy, associating information with an inmate in a database, providing selective access to the electronic copy by the inmate, and displaying the electronic copy of

1

the postal mail to the inmate on a remote kiosk. Separately, these elements provide improvements over conventional methods of detecting and reducing contraband in correctional facilities by removing the possibility of physical contraband reaching the inmate, allowing efficient screening of mail contents, enabling the ability to track postal mail patterns with an inmate or across a correctional facility, and reducing face-to-face interactions between inmates and staff. But more importantly, when these claimed elements are read together *as a whole*, and as claimed, "the risk of said recipient inmate receiving contraband in postal mail is essentially eliminated." As discussed in the Asserted Patent, none of the conventional methods of reducing contraband in inmate postal mail—each distinct from the claimed invention—could make the claim of eliminating contraband. Simply put, the claimed invention is not merely an automated version of a conventional process. Rather, the claims specify an improved process solving a longstanding problem in corrections and eliminate contraband in inmate postal mail.

## II.  BACKGROUND

In June 2014, the Supreme Court confirmed a now-familiar, two-part test for determining the subject-matter eligibility of patent claims under § 101. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The *Alice* decision changed the landscape of how the subject-matter eligibility of claims should be analyzed. *See Inventor*

*Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379 (Fed. Cir. 2017) (noting that a "§ 101 defense previously lacking in merit may be meritorious after *Alice*"); 2014 Interim Guidance on Patent Subject Matter Eligibility, 79 Fed. Reg. 74618 (Dec. 16, 2014) (amending patent-examination guidelines in the wake of *Alice*). The PTO acted quickly, instructing its examiners to implement the *Alice* test and illustrating how to do so, providing flow charts and examples. *See e.g.*, 79 Fed. Reg. at 74621-74624. Thus, at least by the end of 2014 (nearly one-and-a-half years before the Asserted Patent's filing date), patent applications were being examined for subject-matter eligibility under the *Alice* framework.

The application that issued as the Asserted Patent (the "'171 application") was filed on May 12, 2016 and issued three years later, on May 14, 2019. By 2016, and certainly by 2019, the *Alice* test had become familiar to the patent bar, courts, and patent examiners alike.

The '171 application was examined in accordance with examination guidelines incorporating the *Alice* test. In fact, the patent examiner reviewing the '171 application rejected the pending claims as initially filed, alleging in part that the then-pending claims did not recite patent-eligible subject matter. (*See* Dkt. 47-2 at 3-5 (Non-Final Office Action dated Sept. 27, 2018.) As is common during patent prosecution, the patent examiner and Smart Communications' attorney discussed the subject-matter-eligibility rejection and reached agreement on claims that would

overcome that rejection. (*See* Dkt. 47-3 (Applicant's Interview Summary dated Jan. 20, 2019); Dkt. 47-4 (Response to Office Action dated Feb. 18, 2019).) Accordingly, on March 14, 2019, the patent examiner withdrew the § 101 rejection and allowed the claims. (Dkt. 47-5 (Notice of Allowance).) Now containing claims that the PTO determined were patent-eligible under § 101, the '171 application proceeded to issue as the Asserted Patent.

Without justification or changed circumstances, and despite the exact issue having been analyzed by the PTO during prosecution, Defendants ask this Court to substitute its judgment over that of the PTO's—and without even attempting to explain why the PTO erred. The Court need not repeat this same analysis.

## III.    ARGUMENT

Section 101 expansively defines the scope of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" are patentable. 35 U.S.C. § 101. Abstract ideas, like laws of nature or natural phenomena, are exceptions to this expansive list and are not patentable. *See, e.g.*, *Alice*, 573 U.S. at 216-17. Underpinning these exceptions is a concern of preempting "the basic tools of scientific and technological work," lest patents impede innovation rather than promote it. *Id*. at 216 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

The Supreme Court further warned courts to "tread carefully," to avoid having the abstract-idea analysis "swallow all of patent law." *Id.* at 217. Importantly, just because a patent claim may relate to an abstract idea does not render it invalid. *Id.* ("At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'") (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)). The *Alice* two-part test separates patent claims that would pre-empt an abstract idea *per se* from those that take an abstract idea and integrate it into "a new and useful end," which "remain eligible for patent protection." *Id.* at 217.

Keeping in mind the need to "tread carefully," issued U.S. patents are presumed valid. *See* 35 U.S.C. § 282(a). This presumption of validity creates a heightened burden of proof for infringers, who are required to prove an invalidity defense by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 102 (2011). The rationale behind the presumption is that after examining a pending patent application's claims and thereafter deciding to issue the patent, the PTO is "presumed to do its job." *Id.* at 97.

And the PTO did its job here. The '171 application was filed well ***after*** both the Supreme Court decided *Alice* and the PTO released its updated *Alice*-based examination guidelines, instructing examiners how to analyze subject-matter eligibility. All relevant facts and law were before the examiner, and the clear-and-

convincing burden of demonstrating invalidity lies particularly heavy. *See id.* at 108-112; *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (issued patents are presumed patent eligible); *Jedi Techs., Inc. v. Spark Networks, Inc.*, No. 1:16-cv-1055-GMS, 2017 WL 3315279, at *5 (D. Del. August 3, 2017) ("At the motion to dismiss stage a patent claim can be found directed towards patent-ineligible subject matter if the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility.") (emphasis in original).

Unsurprisingly, it is "rare that a patent infringement suit can be dismissed at the motion to dismiss stage for lack of patentable subject matter . . . because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary." *Card Verification Sols., LLC v. Citigroup Inc.*, No. 13 C 6339, 2014 WL 4922524, at *2 (N.D. Ill. Sept. 29, 2014); *see also Celgene Corp. v. Lotus Pharm. Co.*, Civ. Act. No. 17-6842-SDW-LDW, 2018 WL 6584888, at *1 (D.N.J. Dec. 14, 2018); *Blackberry Ltd. v. BLU Prods., Inc.*, No. 1:16-cv-23535, 2017 WL 5004845, at *2 (S.D. Fla. Mar. 27, 2017).

Still, Defendants ignore the Supreme Court's admonition to "tread carefully" on a subject-matter-eligibility analysis. Their Motion overgeneralizes the claims in an attempt to recast them into an abstract idea and then gives short shrift to the second half of the *Alice* test: whether the elements of the claims, both individually and as an ordered combination, present a new and useful method or system or are

so well known and conventional that the claim is effectively nothing more than the abstract idea itself.

Defendants fail to carry their heavy burden of demonstrating that each asserted claim of the Asserted Patent is not patent eligible by clear and convincing evidence. This is not one of those rare instances in which a suit can be dismissed on § 101 grounds. The Motion should be denied.

### A.   The Motion neither explains why claim construction is allegedly unnecessary nor proves the conventionality of claimed elements.

"The construction of patent claims plays a critical role in nearly every patent case." Peter S. Menell, Matthew D. Powers, & Steven C. Carlson, *Patent Claim Construction: A Modern Synthesis and Structured Framework*, 25 Berkeley Tech. L.J. 714, 716 (2010). The analysis of whether claims recite patent-eligible subject matter requires a complete understanding of what the claims mean. *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019) ("Determining patent eligibility requires a full understanding of the basic character of the claimed subject matter."). Without a full understanding of what the patent means, the second half of the *Alice* analysis—whether claim elements, alone and in combination, are conventional or new and useful—cannot be accurately undertaken. *Slyce Acquisition Inc. v. Syte – Visual Conception Ltd.*, No. W-19-CV-00257-ADA, 2020 WL 278481, at *5 (W.D. Tex. Jan. 10, 2020) (collecting cases and noting that due to the impact of claim construction on the eligibility analysis, "it is generally wiser—and more

efficient—to wait to determine a patent's § 101 eligibility until <u>after</u> issuing its claim construction order") (emphasis in original); *e-Numerate Sol'ns, Inc. v. U.S.*, 149 Fed. Cl. 653, 577-79 (Fed. Cl. 2020) (collecting scholarly articles discussing how disposition of subject-matter eligibility on a motion to dismiss risks invalidating meritorious patents given the lack of evidence of what is conventional or inventive).

Rather than describing why "the claims use ordinary language and do not require construction," the Motion assumes clarity, overgeneralizes claim limitations, and sweeps the remainder away as "conventional." For a party having the burden of proving invalidity by clear and convincing evidence, skipping a critical claim-construction analysis is fatal. As the Motion fails to identify claim terms for construction or construe any terms, Smart Communications does not know where disputes may exist. And forcing Smart Communications to proffer constructions in the abstract would not only improperly shift Defendants' burden but also vitiate the fairness in claim-construction proceedings, where claim terms proposed for construction are typically offered simultaneously after the parties understand the details of the accused systems as well as any prior art being asserted.

Knowing what the claims of the Asserted Patent mean is critical to obtaining a "full understanding" of the claimed subject matter—which itself is a necessary

prerequisite to determining the subject-matter eligibility of the asserted claims. *MyMail*, 934 F.3d at 1379. Particularly because Defendants altogether fail to address what the claim terms mean, and further because the Court "stands a better chance of making the correct § 101 eligibility decision by delaying that decision in order to spend more time understanding the patent[] and its nuances, as well as technology in general, and what was well-understood, routine, and conventional" in the art, the Motion should be denied. *Slyce*, 2020 WL 278481, at *7 (quotation omitted).

### B. The claims of the Asserted Patent are drawn to specific systems and methods for eliminating contraband in correctional facilities and overcame known, technical problems in conventional systems to reduce contraband.

Defendants' incorrect contention that the claims of the Asserted Patent are directed to "fundamental human processes" of "receiving, sorting, reviewing, logging, screening, and distributing inmate mail" is incorrect. (*See* Dkt. 47 at 11.) In fact, the attorney-argument assertion that a string of six verbs (receiving, sorting, reviewing, logging, screening, and distributing) related to inmate mail is somehow a "fundamental" human process akin to tying one's shows belies common sense. The claims here are anything but "fundamental." Because "[a]t some level, all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomenon, or abstract ideas," *Alice*, 573 U.S. at 217 (quotations omitted), "it is not enough to merely identify a patent-ineligible concept underlying

9

the claim; [the court] must determine whether that patent-ineligible concept is what the claim is *directed to*." *Thales Visionix Inc. v. U.S.*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) (internal quotations omitted). In pursuing that inquiry, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).

The claims here are far from "fundamental." Rather, the claims describe specific systems and methods for eliminating contraband transmitted through the mail at correctional facilities.

The first step in the *Alice* analysis determines "whether the claims 'focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'" *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).

As outlined in the Asserted Patent, contraband transmitted through postal mail has long been a problem at correctional facilities; includes physical contraband, such as drugs, weapons, or poison, as well as other contraband such as participation in or direction of other criminal activity; and is "a daily problem and security risk that every correctional agency must combat." (*See, e.g.*, Dkt. 47-1

(Asserted Patent) at 3:35-46, 59-61.) Conventional methods and systems employed at correctional facilities, such as manual inspection and hand-delivery of photocopies of postal mail to inmates, are expensive, time-consuming, labor-intensive, and remain ineffective in eliminating contraband and place facility staff at risk by increasing their exposure to both potential contraband and inmates. (*Id.* at 3:47-4:7.) Still further, conventional inmate-mail-delivery processes did not generate mail-delivery records, hindering the possibility of investigating patterns in mail correspondence. (*Id.* at 4:29-34.) The claims of the Asserted Patent are directed to addressing these problems. Claim 1 is reproduced below:

> 1. A method for eliminating contraband in postal mail for one or more remote correctional facilities comprising,
>
> [a] receiving postal mail at a central facility;
>
> [b] identifying mail information comprising recipient inmate and inmate institution;
>
> [c] identifying an inmate email account and the associated inmate identifier associated with said inmate;
>
> [d] identifying sender information and recording it in a database containing the inmate identifier;
>
> [e] identifying content information;
>
> [f] associating said sender information and said content information with said inmate identifier;
>
> [g] screening said postal mail for contraband;
>
> [h] scanning said content information and sender information and generating a scanned electronic copy and a text-readable version of said electronic copy wherein said scanned electronic copy and said text-readable version are stored electronically in a database using the inmate identifier as the primary key;

11

[i] storing an electronic copy of said electronic copy and said text-readable version for electronic transmission to said recipient inmate;

[j] associating a contraband flag with said electronic copy and said text-readable version;

[k] associating said electronic copy and said text-readable version with an access flag, said access flag denies access to said inmate to said electronic copy and said text-readable version based on content or information contained in said electronic copy and said text-readable version;

[l] associating said electronic copy with said inmate email account and the associated inmate identifier;

[m] assigning the electronic copy with an unique identifier;

[n] presenting said electronic copy for review by institution staff;

[o] determining access to said electronic copy by said recipient inmate wherein access may be granted or denied based upon whether contraband was discovered in said postal mail;

[p] displaying said electronic copy of said postal mail to said recipient inmate associated with said inmate identifier on a remote kiosk capable of receiving and sending electronic mail; and

[q] logging the date of receipt and each access to said electronic copy by said recipient inmate or said institution staff, wherein the risk of said recipient inmate receiving contraband in postal mail is essentially eliminated.

Claim 1, for example, is directed to specific systems and methods for eliminating contraband transmitted through the mail at correctional facilities—a long-recognized but, until recently, still unsolved problem at correctional facilities. By generating electronic copies of postal mail, the likelihood of physical contraband like drugs or weapons reaching an inmate greatly diminishes. By generating a text-readable version of an electronic copy, the content of postal mail can be more efficiently screened, which furthers the goal of keeping contraband such as directions or information from an inmate. Associating various types of

information with an inmate allows a correctional facility to track an inmate's correspondence over time, enabling a more sophisticated contraband detection and prevention system. Associating electronic versions of postal mail with an inmate identifier and displaying the electronic copy on a kiosk reduces staff and inmate contact, reducing attendant risks of an altercation. Associating access flags with electronic versions of postal mail prevents an inmate from accessing prohibited mail while maintaining a version of the mail for analysis and future contraband screening.

Taken *as a whole*, the claims of the Asserted Patent present a specific improvement to the long-standing, contraband-detection problem in the corrections industry. *CardioNet*, 955 F.3d at 1368 (determining whether or not claims are directed to an abstract idea is done by reading the claims "as a whole, and in light of the written description"). The claims do not, as Defendants urge, pre-empt all practical methods and systems for distributing mail to inmates at correctional facilities. Nor do the claims recite merely a computerized version of a conventional mail-delivery process. Instead, and like the claims at issue in *CardioNet* and *McRO*, the claims of the Asserted Patent "focus on a specific means or method that improves" longstanding contraband-detection issues with mail delivery in correctional institutions. *See id.* at 1368 (quoting *McRO*, 837 F.3d at 1314).

In contrast, the claims in the cases on which Defendants rely were directed to computerized processes that improved neither the underlying processes nor a computer. For example, the claims in *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887 (Fed. Cir. 2019) recited "nothing more than a computer-implementation of targeted marketing over the Internet"— understandings confirmed by the specification. Other examples include *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 711 F. App'x 1012, 1014-15 (Fed. Cir. 2017) (claims directed to "identifying and categorizing illicit files" analogous to merely an automated "librarian tasked with marking and removing books containing pornographic material") and *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1345-47 (Fed. Cir. 2014) (claims directed to extracting and storing information from a scanned check were automated functions that "humans have always performed"). The Asserted Patent, on the other hand, identifies serious drawbacks in conventional mail-handling processes related to safety or the effectiveness in intercepting contraband transmitted through inmate postal mail and recites claims covering a new inmate mail handling system directed to addressing those drawbacks.

Similarly, in *Secured Mail Sol'ns LLC v. Univ. Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017), the claims at issue "embrace[d] the abstract idea of using a marking affixed to the outside of a mail object to communicate information about

the mail object" were "not limited by rules or steps that establish[ed] how the focus

of the methods [were] achieved." *Secured Mail Sol'ns*, 873 F.3d at 911. Here, over

numerous focused steps, the method of claim 1 specifies a method designed to

reduce contraband from reaching an inmate from an individual piece of mail, and

to reduce related expenses, labor, and risks to staff, all the while boosting the

institution's ability to track a history of correspondence, analyze patterns, and

thereby increase contraband detection going forward. *See, e.g.*, Dkt. 47-1 (Asserted

Patent) at 4:8-28 (reduced likelihood of physical contraband going to an inmate,

reduced staff risks); *id*. at 4:29-51 (correspondence tracking and historical trend

and pattern analysis); *see also Align Tech., Inc. v. 3Shape A/S*, C.A. No. 17-1647-

LPS, 2020 WL 5979353, at *1 (D. Del. Oct. 8, 2020) (relying on the specification

describing claimed elements as improvements over conventional methods of

developing dental treatment plans and holding that "the claims amount to an

improvement of the dental treatment process; they do not simply automate a

previously manual process"). Claims reciting elements directed at providing a

solution to recognized problems in a field are patent eligible. *Amdocs (Israel) Ltd.*

*v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-1301 (Fed. Cir. 2016) (a claim

directed to an arrangement of individually conventional elements to provide a

solution to a recognized problem described in the specification is not directed to an

abstract idea).

Defendants' Motion oversimplifies claim 1 of the Asserted Patent and fails to consider the improvements to the underlying contraband-prevention process that the claims enable. As the claims of the Asserted Patent are directed to specific solutions that solve long-standing problems with conventional contraband detection and reduction processes in the corrections industry, the claims are not directed merely to an abstract fundamental human processes of receiving, sorting, reviewing, logging, screening, and distributing inmate mail. Accordingly, the Motion should be denied.

### C.   A claim may be patent eligible if it brings an improvement on existing processes and need not improve the functioning of a computer.

Relying on cases dealing with computer-centric claims, Defendants argue that the claims of the Asserted Patent are ineligible because they do not improve the technical functioning of a computer. *See* Dkt. 47 at 19-21; *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) (antivirus software); *Return Mail, Inc. v. U.S. Postal Service*, 868 F.3d 1350 (Fed. Cir. 2017) (using barcodes to provide sender of undeliverable mail with updated address); *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161 (Fed. Cir. 2019) (electronically processing checks). The patents in each of these cases were closely associated with either computer-specific issues or with using general-purpose computers to automate broadly applicable processes for efficiency purposes. But here, the claims

of the Asserted Patent are directed to solving correctional-facility-specific problems of detecting contraband and preventing contraband from infiltrating correctional facilities through the postal mail. But utilizing technology to make improvements to the underlying process—detecting contraband and preventing its infiltration—remain patentable. *See Alice*, 573 U.S. at 223 (improving ***either*** the functioning of a computer ***or*** an existing process is patentable).

The claims of the Asserted Patent represent an improvement on existing, and far less successful, attempts to detect contraband and prevent its infiltration into correctional facilities. In this way, the claims are more like those at issue in *Align Tech.*, 2020 WL 5979353, at *1-2 (referring to the specification to identify problems with conventional methods of developing dental treatment plans and looking to see whether the claims are directed to solving those problems). *See also Verint Sys. Inc. v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190, 196 (S.D.N.Y. 2016) (noting that "it is clear that the main thrust behind step one is to determine whether the claim moves beyond a long-understood concept or simply seeks to monopolize one" through the use of a computer); *Gemalto SA v. CPI Card Grp. Inc.*, No. 16-cv-01006-RBJ, 2017 WL 818665, at *6, (D. Col. Mar. 2, 2017) ("The claims at issue are thus directed to an improvement in technology rather than an abstract concept because they clearly set out what the asserted problems in the prior art were said to be, followed by a description of how the patented invention is

said to address those problems."); *Vineyard Investigations v. E.&J. Gallo Winery*,

No. 1:19-cv-01482-NONE-SKO, 2021 WL 22497, at *10 (E.D. Cal. Jan. 4. 2021)

(finding claims directed to "the use real-time in-field sensors and external data

sources to provide the precise delivery of water and certain chemicals to individual

plants in different areas of fields as they require" as patent eligible in step one).

As previously discussed, and like the patents in *Align Tech.*, *Red Box*, and

*Gemalto*, the Asserted Patent describes problems with conventional methods for

detecting contraband and preventing its infiltration and describe how the invention

addresses those problems. As claims directed to improvements of an underlying

process remain eligible regardless of whether the invention improves the

functioning of a computer, the Court should deny the Motion.

**D.     Even if the claims of the Asserted Patent are held to be directed to an abstract idea, the claims are limited to specific, inventive systems and methods for eliminating contraband, presenting no danger of pre-emption.**

As discussed, the Motion has not demonstrated clearly and convincingly that

the claims of the Asserted Patent are directed to an abstract idea—nor can it, given

the improvements over conventional contraband-removal and inmate-mail-

handling processes to which the claims are directed. But if the Court agrees with

Defendants that the claims of the Asserted Patent are directed to the alleged

abstract idea of receiving, sorting, reviewing, logging, screening, and distributing

inmate mail, the Court should find that the remainder of the claim, taken as a

whole, limits the claim to a specific implementation of that idea, presenting no danger of broadly pre-empting the distribution of mail to inmates at correctional facilities.

A claim that pre-empts an abstract idea does little more than recite the abstract idea and add the words "apply it." *Mayo*, 566 U.S. at 72. Claims presenting no risk of pre-empting the use of underlying abstract ideas remain eligible for patent protection. *Alice*, 573 U.S. at 217. The focus in step two of the *Alice* test is the "consideration of the specific claim limitations' narrowing effect." *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). The analysis under § 101 is not an obviousness analysis of whether individual elements existed in the prior art; if the claim, taken as a whole, presents a narrowed implementation of the abstract idea, it recites eligible subject matter. *See id.* at 1350; *see also Ficep Corp. v. Peddinghaus Corp.*, No. 19-cv-1994-RGA, 2021 WL 254104, at *3 (D. Del. Jan. 26, 2021) (noting that "step two is focused on preemption, not novelty" and that "an 'inventive concept' is simply 'an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself'").

The claims here are significantly narrower than "receiving, sorting, reviewing, logging, screening, and distributing inmate mail," are directed at

providing specific solutions to identified problems with conventional contraband detection and reduction processes, and present no danger of broadly preempting the distribution of postal mail to inmates.

Even a cursory review of claim 1, copied in Section III.B. above, reveals that claim 1 is far more specific than the alleged "receiving, sorting, reviewing, logging, screening, and distributing inmate mail." Claim 1 presents no danger of preempting the highly generalized process of "receiving, sorting, reviewing, logging, screening, and distributing inmate mail." But crucially, Defendants focus on recitations of discrete computer-related components and argue that the claim does not recite an improvement over those components. While perhaps appropriate for a patent claim that purports to recite an improved computer component, here, the argument is misplaced.

Indeed, claim 1 of the Asserted Patent, as a whole, presents a solution to a long-standing problem in the corrections industry. Viewing the alleged abstract idea in context of claim 1 illustrates that the claim is not nearly as broad as Defendants would have the Court believe. For example, the Motion fails to explain how the limitations recited in element 1[h]—scanning postal mail, generating an electronic copy and text-readable version of the postal mail, associating the electronic versions with an inmate identifier, and storing the associated electronic versions in a database—pre-empts any receiving, sorting, reviewing, logging,

screening, and distributing inmate mail. That's because those limitations are not

necessary to Defendants' broad abstraction, and they would not preempt mail

distribution. Rather, the limitations are directed to enabling one of the solutions to

the drawbacks of conventional inmate-mail-delivery systems, as explained by the

Asserted Patent:

> In certain embodiments of the present invention, security is enhanced because every piece of postal mail 10 can be documented, saved electronically, and in many cases, made searchable for further review by prison staff and detectives, and may be linked to the specific inmate to whom the postal mail was addressed.

(Dkt. 47-1 (Asserted Patent) at 4:34-39.) The limitations, as part of the methods

and systems claimed as a whole, provide an inventive concept that solves identified

problems in the underlying art and, importantly, does not risk pre-empting other

methods and systems of delivering inmate mail. Element 1[k], associating the

electronic copy and text-readable version of the postal mail with an access flag that

denies an inmate access to the flagged mail based on content within the mail,

presents similar advantages in that it contributes to the improvement in contraband

detection and to the improved safety of an institution's staff by reducing inmate-

staff interactions.

All told, the claims of the Asserted Patent present specific, targeted systems

and methods designed to improve on recognized shortcomings in the corrections

industry. The claims are specific and tailored to those ends. As such, the claims

provide an inventive concept and provide no risk of pre-empting the distribution of postal mail to inmates, and the Motion should be denied.

## IV.      CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Dated: February 24, 2021                    Respectfully submitted,

                                            */s/ Kevin P. Flynn*
                                            John F. Murphy
                                            JohnMurphy@bakerlaw.com
                                            Baker & Hostetler LLP
                                            Cira Centre, 12th Floor
                                            2929 Arch Street
                                            Philadelphia, PA 19104-2891
                                            Telephone: (215) 564-1603
                                            Facsimile: (215) 568-3439

                                            Kevin P. Flynn (*pro hac vice*)
                                            kflynn@bakerlaw.com
                                            Baker & Hostetler LLP
                                            312 Walnut Street, Suite 3200
                                            Cincinnati, OH 45202
                                            Telephone:   (513) 929-3400
                                            Facsimile:    (513) 929-0303

                                            Katrina M. Quicker (*pro hac vice*)
                                            kquicker@quickerlaw.com
                                            Quicker Law, LLC
                                            Two Ballpark Center
                                            800 Battery Avenue SE, Suite 100
                                            Atlanta, GA 30339
                                            Telephone: (678) 750-0451

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
## HARRISBURG DIVISION

**HLFIP HOLDING, INC. d/b/a SMART COMMUNICATIONS IP HOLDINGS**,

        Plaintiff,

    v.

**YORK COUNTY, PENNSYLVANIA**; **YORK COUNTY PRISON;** and **CLAIR DOLL**, *in his official capacity as York County Prison Warden*,

        Defendants.

CIVIL NO. 1:20-cv-00186-CCC

Judge Christopher C. Conner

**JURY TRIAL DEMANDED**

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Local Rule 7.8(b)(2), I certify that this brief (excluding the caption page, tables, signature block, and certifications) contains 4,979 words, as calculated by the word-count tool in Microsoft Word, and thus complies with the word-count limitation set forth in that rule.

Dated: February 24, 2021        Respectfully submitted,

                      /s/ Kevin P. Flynn
                      Kevin P. Flynn

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing

Plaintiff's Brief in Opposition of Defendants' Motion for Judgment on the

Pleadings of Invalidity Under 35 U.S.C. § 101 to be served via CM/ECF and sent

via email to the following recipients on February 24. 2021:

Jack M. Hartman, Esquire
PA ID 21902
Email: ihartman@cgalaw.com
135 North George Street
York, PA 17401
Phone: (717)848-4900
Fax: (717)843-9039
Email: ihartman@cgalaw.com

Michael Specht
Uma Everett
Sterne, Kessler, Goldstein & Fox P.L.L.C.
1100 New York Avenue, NW
Washington, DC 20005
mspecht@sternekessler.com
ueverett@sternekessler.com

/s/ Kevin P. Flynn
Kevin P. Flynn