# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HLFIP HOLDING, INC. d/b/a SMART
COMMUNICATIONS IP HOLDINGS,

     *Plaintiff*,

     v.

YORK COUNTY, PENNSYLVANIA;
YORK COUNTY PRISON; and CLAIR
DOLL, *in his official capacity as York
County Prison Warden*,

     *Defendants*.

Civil Action No. 1:20-CV-00186

(Judge Conner)

## REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT
## ON THE PLEADINGS OF INVALIDITY UNDER 35 U.S.C. § 101

# TABLE OF CONTENTS

I.      The claimed invention is ineligible for patenting because it merely automates a longstanding human practice using generic computer components and techniques. ........................................................................ 2

II.     Smart's arguments concerning preemption are legally irrelevant. ................. 9

III.    There are no claim-construction disputes that need be resolved before conducting the § 101 analysis. ........................................................................ 11

IV.     The presumption of validity does not save Smart's patent. ......................... 13

V.      The complaint should be dismissed with prejudice. ..................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014)....................................................................2, 10, 11

*Align Technology, Inc. v. 3Shape A/S,*
2020 WL 5979353 (D. Del. Oct. 8, 2020) ..........................................7

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
841 F.3d 1288 (Fed. Cir. 2016) ............................................................6

*Applied Materials, Inc. v. Advanced Semiconductor*
*Materials Am., Inc.,*
98 F.3d 1563 (Fed. Cir. 1996) ..........................................................13

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
788 F.3d 1371 (Fed. Cir. 2015) ............................................................9

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.,*
778 F. App'x 882 (Fed. Cir. 2019) ......................................................8

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018) ............................................................9

*CardioNet LLC v. InfoBionic, Inc.,*
955 F.3d 1358 (Fed. Cir. 2020) ............................................................6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
776 F.3d 1343 (Fed. Cir. 2014) ......................................................4, 14

*Elec. Power Grp. v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016) ............................................................5

*Ficep Corp. v. Peddinghaus Corp.,*
2021 WL 254104 (D. Del. Jan. 26, 2021) ..................................3, 7, 8

*Gemalto S.A. v. CPI Card Grp. Inc.,*
2017 WL 818665 (D. Colo. Mar. 2, 2017) ..........................................7

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ....................................................5, 14

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ............................................................7

*Regents of the Univ. of Minnesota v. LSI Corp.*,
  926 F.3d 1327 (Fed. Cir. 2019) ..........................................................13

*Return Mail, Inc. v. U.S. Postal Serv.*,
  868 F.3d 1350 (Fed. Cir. 2017) *rev'd on other grounds*,
  139 S. Ct. 1853 (2019)...................................................................9, 10

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) ..........................................................4, 9

*Simio, LLC v. FlexSim Software Prods., Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020) ......................................................3, 11

*Solutran, Inc. v. Elavon, Inc.*,
  931 F.3d 1161 (Fed. Cir. 2019) ..........................................................10

*Verint Sys. Inc. v. Red Box Recorders Ltd.*,
  226 F. Supp. 3d 190 (S.D.N.Y. 2016) ..................................................7

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
  793 F.3d 1306 (Fed. Cir. 2015) ......................................................3, 4

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
  887 F.3d 1376 (Fed. Cir. 2018) ..........................................................9

## Statutes and Rules

35 U.S.C. § 101 ....................................................................*passim*

35 U.S.C. § 282(a) ...............................................................................13

Fed. R. Civ. P. 11 ................................................................................12

**Other Authorities**

Defs.' Mot. J. on Pleadings, *HLFIP Holding, Inc. v. Rutherford
    Cty., Tenn.*, No. 3:19-cv-00714, Dkt. 86
    (E.D. Tenn. Mar. 30, 2020) ................................................................................. 12

Joint Claim Construction Chart, *HLFIP Holding, Inc. v. Rutherford
    Cty., Tenn.*, No. 3:19-cv-00714, Dkt. 172
    (E.D. Tenn. Oct. 20, 2020) ................................................................................. 12

Smart's complaint should be dismissed with prejudice. The '617 patent is invalid under § 101 because its claims simply automate a longstanding human activity—receiving, sorting, reviewing, logging, screening, and distributing inmate mail—using generic computer components and techniques.

Smart's opposition is notable for what it does *not* do.[1] Smart does not engage with the portions of the patent specification cited by the County, which conclusively show that the claimed method is simply an automated version of a manual mail-distribution method that correctional facilities have been performing for years. Smart does not address the vast majority of the Federal Circuit caselaw cited in the County's opening brief, which conclusively shows that claims like these are ineligible. Smart does not contend that there are any factual disputes preventing the Court from resolving the § 101 issue on the pleadings. And Smart does not request leave to amend the complaint to add allegations relevant to the eligibility inquiry.

Instead, Smart repeatedly asserts (*e.g.*, at 13) that the claims "present a specific improvement" that solves the "long-standing" problem of contraband detection in correctional facilities. But the purported "improvements" Smart identifies amount to nothing more than use of generic computer components like

---

[1] This reply cites Smart's opposition as "Smart Br." and the County's opening brief as "County Br."

scanners and kiosks. Such features are categorically insufficient to render the invention patent-eligible. And Smart never explains how its automated mail-processing method solves the contraband-detection problem any differently from (or any better than) the prior-art manual process. These failures are fatal to Smart's case. The County's motion should be granted.

## I.   The claimed invention is ineligible for patenting because it merely automates a longstanding human practice using generic computer components and techniques.

The County's opening brief demonstrates (at 10–16) that the asserted claims fail *Alice* Step One because they are directed to an automated version of a longstanding human process.[2] It also demonstrates (at 17–19) that the claims fail *Alice* Step Two because they implement this abstract idea using only conventional computer components and techniques arranged in a conventional way. The claims are therefore ineligible for patenting under § 101.

Smart's attempts to rebut the County's showing fail at every turn.

**A.**   Smart spends much of its brief pointing to various efficiencies that the claimed method purportedly realizes by virtue of its automation. *See, e.g.*, Smart Br. 11 (stating that prior-art "manual inspection and hand-delivery of photocopies of postal mail to inmates" was "expensive, time-consuming, [and] labor-

---

[2] As the opening brief explains (at 11 n.1), claim 1 is representative for purposes of the § 101 inquiry. Smart does not dispute that claim 1 is represenative, nor does it contend that the dependent claims impact the eligibility analysis.

intensive"); *id.* (claimed invention automatically "generate[s] mail-delivery records"); *id.* at 12 ("By generating a text-readable version of an electronic copy, the content of postal mail can be more efficiently screened . . . ."); *id.* at 13 ("Associating electronic versions of postal mail with an inmate identifier and displaying the electronic copy on a kiosk reduces staff and inmate contact . . . ."). The problem with these arguments is that, even assuming that the claimed process is more accurate or efficient than the prior-art manual process by virtue of the fact that it is automated, that is not sufficient to impart patent eligibility. Smart's own preferred authority recognizes this: "if a claim simply takes . . . something that humans have done for a long time[] and does nothing more than make use of a generic computer to perform [it] faster or more accurately . . . then the claim is ineligible." *Ficep Corp. v. Peddinghaus Corp.*, 2021 WL 254104, at *2 (D. Del. Jan. 26, 2021) (cited at Smart Br. 19). What is required for eligibility—but missing from these claims—is a *technological* improvement. *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1361 (Fed. Cir. 2020) (claims that improved the "experience of a user" but did not improve "the *computer's* functionality" were not patent-eligible); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015) (claims that employed a computer to "improve the performance of [price] determination" but did not "improv[e] computer performance" were not patent-eligible). Like the claims in *Versata*, "the claims at issue [here] do not

improve some existing technological process or solve some technological problem in conventional industry practice." 793 F.3d at 1334.

Smart nowhere identifies any technological improvement achieved by the patented method. It vaguely asserts (at 14)—albeit without citation to any factual allegations in the complaint or any intrinsic evidence—that the claims "cover[] a new inmate mail handling system directed to addressing [certain] drawbacks." But Smart's opposition, for all its length, does not identify a single limitation (or combination of limitations) that is actually "new" or unconventional. On the contrary, every aspect of the invention that Smart mentions is a generic computer function.

*First*, Smart says (at 12) that the invention involves generating "text-readable" "electronic copies of postal mail." That is conventional. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (using "a scanner or other digitizing device to extract data from a document" is a conventional computer function).

*Second*, Smart says (at 12–13) that the invention allows the correctional facility to "[a]ssociat[e] various types of information with an inmate" using an "identifier." That is conventional too. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017) (using "identifiers" to categorize

mail objects and storing mail objects with associated identifiers in a database are conventional computer functions).

*Third*, Smart says (at 13) that the invention allows for displaying the electronic copy on a kiosk. That is also conventional. *See Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("presenting . . . information" electronically is a conventional computer function).

*Fourth*, Smart says (at 13) that the invention allows facilities to "[a]ssociat[e] access flags with electronic versions of postal mail." That, too, is conventional. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313, 1315 (Fed. Cir. 2016) (using electronic tags or identifiers to label or categorize electronic information is a conventional computer function).[3]

In short, Smart's assertion (at 13) that the claims do not "recite merely a computerized version of a conventional mail-delivery process" is insupportable. That is *exactly* what the claims do.

**B.**     Smart also suggests (at 2, 10–11, 17) that the claims recite an "improved process" that solves the problem of "eliminating contraband" in a way the prior art did not. But the patent specification itself demonstrates that this

---

[3] As noted in the County's opening brief (at 5), the conventional nature of the claimed "components and techniques is evidenced by the fact that the inventors saw no need to describe them in any detail in the specification, instead assuming that skilled artisans will understand those components and techniques and how they work." Smart does not respond to this point.

assertion is not true. The specification admits that correctional facilities commonly "ma[de] photocopies of mail to be hand delivered to an inmate instead of the original item" in order to "combat contraband." '617 patent 4:1–7; County Br. 3; *contra* Smart Br. 2 (incorrectly stating that "none of the conventional methods of reducing contraband in inmate postal mail . . . could make the claim of eliminating contraband"); *id.* at 12 (incorrectly stating that the problem of eliminating contraband in inmate mail was "still unsolved" before the claimed invention).[4]

**C.** The legal authority Smart cites—which consists largely of non-binding district-court cases—is inapposite. In every one of the cases to which Smart analogizes, the patentee presented allegations or evidence that the claimed invention differed from the prior art in ways other than the mere fact of its automation:

- In *CardioNet LLC v. InfoBionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020), the claimed cardiac-monitoring system used new techniques that doctors had not previously employed manually. *Id.* at 1370.

- In *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016), the claimed invention involved "an unconventional technological solution (enhancing data in a distributed fashion) to a technological problem

---

[4] The specification does say that the prior-art manual methods did "not entirely eliminate contraband." '617 patent 3:66–4:1. But, as Smart concedes (at 12), that is true of the claimed invention as well: Smart's method only "diminishes" (but does not eliminate) "the likelihood of physical contraband like drugs or weapons reaching an inmate." And Smart makes no mention of how its method allegedly differs from prior-art manual methods when it comes to eliminating other forms of contraband like "pornography."

6

(massive record flows which previously required massive databases)" that "achieve[d] an improvement in computer functionality." *Id.* at 1300–01.

- In *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), the claimed process improved computer animation by using an automated process different from the prior-art manual techniques used by animators. *Id.* at 1314.

- In *Ficep*, the claimed invention carried out its automated process "differently than a human would." 2021 WL 254104, at *7.

- In *Align Technology, Inc. v. 3Shape A/S*, 2020 WL 5979353 (D. Del. Oct. 8, 2020), the claimed invention "amount[ed] to an improvement of the dental treatment process" and did "not simply automate a previously manual process." *Id.* at *2.

- In *Gemalto S.A. v. CPI Card Group Inc.*, 2017 WL 818665 (D. Colo. Mar. 2, 2017), the claimed invention used a "unique architecture" to improve prior-art smart-card customizing systems. *Id.* at *6–7.

- In *Verint Systems Inc. v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190 (S.D.N.Y. 2016), the claimed method of protecting sensitive information improved prior-art methods because it "protect[ed] sensitive verbal information that was spoken and being recorded," whereas prior-art manual methods stored verbal information "in its entirety with both the sensitive and nonsensitive information intact and capable of being played back." *Id.* at 200.

Here, the situation is very different: the *only* difference between the claimed invention and the prior art is that the claimed invention is automated. That is not enough to save the claims from abstractness.

Indeed, one of the district-court cases cited by Smart—*Ficep*—helpfully describes the line between technological improvements that involve automation (which are patent-eligible) and mere automation of prior-art processes using

generic components and techniques (which are patent-ineligible). As the *Ficep* court explained, "if a claim simply takes an abstract idea (say, something that humans have done for a long time) and does nothing more than make use of a generic computer to perform the abstract idea faster or more accurately than a human could . . . then the claim is ineligible." 2021 WL 254104, at *2. "[O]n the other hand," if the patent "claim[s] something that amounts to a *specific improvement* to computer technology," the claim is likely eligible. *Id.* at *3.

The claims here plainly fall in the former category. As explained in the County's opening brief and above, the computer components and techniques recited in the '617 patent claims—considered both individually and in combination—are entirely conventional. *See* County Br. 1, 4–5, 13, 15, 17–19; *supra* pp. 2–5. And, as also explained above, Smart's opposition does not and cannot show otherwise.

**D.**     Smart further asserts (at 9) that the claimed process of receiving, sorting, reviewing, logging, screening, and distributing inmate mail cannot qualify as a longstanding human activity because it is more complicated than "tying one's sho[e]s." But, as the cases cited in the County's opening brief—most of which Smart ignores—demonstrate, human practices need not be of shoe-tying simplicity to qualify as patent-ineligible abstract ideas. Ineligible longstanding human practices identified by the Federal Circuit include "targeted marketing," *Bridge &*

8

*Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887 (Fed. Cir. 2019),

affixing a marking to a mail object "to communicate information about the mail

object," *Secured Mail*, 873 F.3d at 911, and "voting, verifying the vote, and

submitting the vote for tabulation," *Voter Verified, Inc. v. Election Sys. & Software

LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018). The claimed concept here is of a piece.

## II.  Smart's arguments concerning preemption are legally irrelevant.

Smart repeatedly protests (at 13, 15, 18–22) that its claims do not "pre-empt

all practical methods and systems for distributing mail to inmates at correctional

facilities." These arguments miss the mark. Federal Circuit law is clear that,

"[w]hile preemption may signal patent ineligible subject matter, the absence of

complete preemption does not demonstrate patent eligibility." *Return Mail, Inc. v.

U.S. Postal Serv.*, 868 F.3d 1350, 1370 (Fed. Cir. 2017) (quoting *Ariosa

Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015)). Thus,

"claims that are otherwise directed to patent-ineligible subject matter cannot be

saved by arguing the absence of complete preemption." *Id.* (collecting cases);

*accord, e.g.*, *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir.

2018). Here, Smart's claims are "specific" in that they do not cover *all* possible

methods of processing and distributing inmate mail. But specificity—i.e., the "absence of complete preemption"—does not equal eligibility.[5]

In a related argument, Smart—after conceding that the use of "general-purpose computers to automate broadly applicable processes for efficiency purposes" does not constitute a patent-eligible invention—maintains (at 16–17) that this principle does not apply here because its claims are "directed to solving correctional-facility-specific problems." Smart is wrong. The law is clear that "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 222 (2014) (cleaned up). For example, the fact that the claims in *Solutran* were directed to the specific context of check processing did not save them from ineligibility; because they did nothing more than automate that process using "a scanner and computer and routine data-gathering steps," they were invalid under § 101. *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019). The same conclusion is appropriate here: the fact

---

[5] Contrary to Smart's statement (at 13), the County's opening brief did not "urge" that the claims "pre-empt all practical methods and systems for distributing mail to inmates at correctional facilities." In fact, the County said the opposite, acknowledging (at 15–16) that the claims include many steps and are "highly specific." But, the County explained, *that is irrelevant*, because "claims that are otherwise directed to patent-ineligible subject matter cannot be saved by arguing the absence of complete preemption." *Id.* at 16 (quoting *Return Mail*, 868 F.3d at 1370; *see also id.* at 16 ("The claims may be highly specific, but they are nonetheless abstract.")). Smart offers no response to this point.

that Smart's claims are limited to the environment of correctional facilities does not make them patent-eligible.

## III. There are no claim-construction disputes that need be resolved before conducting the § 101 analysis.

As explained in the County's opening brief (at 10), the claims of the '617 patent "use ordinary language and do not require construction for purposes of the § 101 inquiry." Smart says otherwise (at 7–9), but—tellingly—Smart is unable to specify a single claim term or phrase that purportedly needs to be construed before conducting a § 101 analysis. Indeed, Smart admits (at 8) that it "does not know where disputes may exist." That admission conclusively demonstrates that claim construction is not necessary to resolve the dispute here. *See Simio*, 983 F.3d at 1365 (affirming district court's decision to determine eligibility without first conducting claim construction because patentee had "not explained how it might benefit from any particular term's construction under an *Alice* § 101 analysis").

Contrary to Smart's statement (at 8), Smart would not have to "proffer constructions in the abstract" to show that claim construction affects the eligibility inquiry. *Id.* Smart need only explain what potential claim-construction disputes exist that make Defendants' motion premature. But Smart has not done so, because it cannot.

Smart's complaints (at 8) that it needs to "understand the details of the accused systems as well as any prior art" in order to identify any claim-

11

construction disputes ring hollow. This motion concerns eligibility, not infringement or obviousness. *Cf.* Smart Br. 19 ("The analysis under § 101 is not an obviousness analysis of whether individual elements existed in the prior art . . . ."). And Smart does not explain why the accused systems or the prior art would be relevant to any claim-construction issue that bears on the § 101 analysis. Even more fundamentally, this is *Smart's patent*, and *Smart filed this lawsuit*. Smart—assuming it satisfied its pre-filing investigation obligations under Rule 11—understands what systems it accused, and it understands the relevant prior art from prosecution. Smart is simply trying to delay the inevitable.

Perhaps the most telling indication on this score can be found in Smart's conduct in another lawsuit in which it has asserted the '617 patent. *See HLFIP Holding, Inc. v. Rutherford Cty., Tenn.*, No. 3:19-cv-00714 (M.D. Tenn. filed Aug. 15, 2019). In that case—in which the defendants have likewise asserted that the '617 patent is invalid under § 101, *see id.*, Dkt. 86 (Mar. 30, 2020)—the parties have already briefed claim construction, and Smart has expressly asserted that *no term requires construction*. *See id.*, Dkt. 172 (Oct. 20, 2020). Smart's assertion here that claim construction is necessary before the Court can decide this issue is directly contrary to Smart's representations in the Tennessee case.

**IV.    The presumption of validity does not save Smart's patent.**

Smart repeatedly contends (at 1, 3–4, 5–6) that the Court should simply accept the Patent Office examiner's determination regarding the eligibility of the claims. Not so. Any deference due to the PTO's judgment is already captured by the statutory presumption of validity. *See* 35 U.S.C. § 282(a); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996) ("The presumption of validity is based on the presumption of administrative correctness of actions of the agency charged with examination of patentability."). And the statute expressly makes that presumption rebuttable. *See* 35 U.S.C. § 282(a) (patent challenger bears the "burden of establishing invalidity"). The rebuttable nature of the presumption makes good sense: "in light of the USPTO's constrained resources and the absence of material outside input during the initial examination, it is inevitable that there are patents granted in error." *Regents of the Univ. of Minnesota v. LSI Corp.*, 926 F.3d 1327, 1332 (Fed. Cir. 2019).

For the reasons explained in the County's opening brief and this reply, the County—like the defendants in the approximately two dozen cases cited in the opening brief in which claims were found ineligible for patenting—has presented the requisite clear and convincing showing of invalidity here. The presumption of validity has been rebutted.

13

Smart's statement (at 4) that the County has not "even attempt[ed] to explain why the PTO erred" is demonstrably false. The County has explained at length why the '617 patent claims are ineligible under Federal Circuit precedent. *See* County Br. 10–22; *supra* pp. 2–11. And the County specifically explained that the elements the patentee added to overcome the PTO examiner's § 101 rejection do not save the claims from abstractness (or conventionality). The patentee added "limitations indicating that a 'text-readable' electronic copy is created," County Br. 8, but that is not enough to render the claims eligible: the Federal Circuit has "made clear that using 'a scanner or other digitizing device to extract data from a document' is not inventive," *id.* at 15 n.2 (quoting *Content Extraction*, 776 F.3d at 1347–48). The patentee "added additional language concerning 'access flags' and 'identifiers,'" *id.* at 8, but that is not inventive either: "as the Federal Circuit has held, employing electronic tags or identifiers to label or categorize electronic information is a 'generic computer function[],'" *id.* at 17 (quoting *Symantec*, 838 F.3d at 1313, 1315). And, as the County also explained (at 8), the examiner provided no contrary analysis; he simply allowed the amended claims without comment. This Court need not defer to an unexplained agency decision that is demonstrably contrary to binding Federal Circuit precedent.

**V.      The complaint should be dismissed with prejudice.**

The claims of the '617 patent use generic computer technology to implement a basic human practice that—as the specification admits—has been carried out manually for years. They are therefore directed to an abstract idea, and they contain no inventive concept that saves them from ineligibility. Smart does not and cannot show otherwise, and it has not requested leave to amend its complaint. Accordingly, this case should be dismissed with prejudice.

Dated: March 8, 2021                    Respectfully submitted,

                                        CGA Law Firm

                                        By: */s/ Jack M. Hartman*
                                        (signed with permission)
                                        Jack M. Hartman, Esquire
                                        PA ID 21902
                                        135 North George Street
                                        York, PA 17401
                                        Phone: (717)848-4900
                                        Fax: (717)843-9039
                                        Email: jhartman@cgalaw.com


                                        Michael D. Specht
                                        Uma Everett
                                        Sterne, Kessler, Goldstein & Fox
                                        P.L.L.C.
                                        1100 New York Avenue NW, Suite 600
                                        Washington, DC 20005
                                        (202) 371-2600
                                        mspecht@sternekessler.com
                                        ueverett@sternekessler.com

                                        *Attorneys for Defendants*

## **CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.8(b)(2), I certify that this brief contains 3,465 words and therefore complies with the word-count limitation set forth in that rule. This figure was calculated using the word-count feature of Microsoft Word.

*/s/ Uma N. Everett*
Uma N. Everett
Sterne, Kessler, Goldstein & Fox
P.L.L.C.
1100 New York Avenue, NW
Washington, D.C. 20005
Phone: (202) 772-8520
Facsimile: (202) 371-2540

*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 8, 2021, a true and correct copy of the foregoing

**Reply Brief in Support of Defendants' Motion for Judgment on the Pleadings**

**of Invalidity Under 35 U.S.C. § 101** was served via ECF on counsel of record.

> */s/ Uma N. Everett*
> Uma N. Everett
> Sterne, Kessler, Goldstein & Fox
> P.L.L.C.
> 1100 New York Avenue, NW
> Washington, D.C. 20005
> Phone: (202) 772-8520
> Facsimile: (202) 371-2540
>
> *Attorney for Defendants*