## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HLFIP HOLDING, INC. d/b/a SMART COMMUNICATIONS IP HOLDINGS, | |
| *Plaintiff*, | Civil Action No. 1:20-CV-00186 |
| v. | (Judge Conner) |
| YORK COUNTY, PENNSYLVANIA; YORK COUNTY PRISON; and ADAM OGLE *in his official capacity as York County Prison Warden*, | |
| *Defendants*. | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## <u>OPENING CLAIM CONSTRUCTION BRIEF</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................1

II.   BACKGROUND ......................................................................................2

III.  LEGAL STANDARD ..............................................................................3

IV.   LEVEL OF ORDINARY SKILL ............................................................4

V.    ARGUMENT............................................................................................5

    A.    Claim Constructions ......................................................................5

        1.    "Remote Kiosk" Terms ........................................................5

            a.    "kiosk" ......................................................................6

            b.    "remote"....................................................................8

            c.    "capable of" ............................................................13

        2.    "Text-Readable" Terms ......................................................16

        3.    "inmate email account" (claims, 1, 13)....................................20

        4.    "pre-screening said sender for correspondence from legal
            counsel" (claim 8) ..............................................................21

    B.    Indefinite Terms .........................................................................24

        1.    "essentially eliminated" (claim 1)............................................27

         2.    "an electronic copy of said electronic copy and said text
            readable version" (claim 1)................................................32

         3.    "wherein said scanned electronic copy and said text-
            readable version are stored electronically in a database
            using the inmate identifier as the primary key" (claim 1) ........34

         4.    "scanning station with an input interface adapted to …".........36

VI.   CONCLUSION........................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altiris, Inc. v. Symantec Corp.*,
   318 F.3d 1363 (Fed. Cir. 2003) ............................................................24

*Atmel Corp. v. Information Storage Devices, Inc.*,
   198 F.3d 1374 (Fed. Cir. 1999) ...........................................................25

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) .....................................................25, 28

*Braintree Laboratories, Inc. v. Novel Laboratories, Inc.*,
   749 F.3d 1349 (Fed. Cir. 2014) .............................................................3

*Bushnell Hawthorne, LLC v. Cisco Systems, Inc.*,
   813 F. App'x 522 (Fed. Cir. 2020) .......................................................33

*Cayenne Medical, Inc. v. Medshape, Inc.*,
   2016 WL 2606983 (D. Ariz. 2016) .......................................................28

*Geodynamics, Inc. v. Dynaenergetics US, Inc.*,
   2016 WL 6217181 (E.D. Tex. 2016).....................................................31

*Helmsderfer v. Bobrick Washroom Equipment, Inc.*,
   527 F.3d 1379 (Fed. Cir. 2008) ...........................................................24

*HSM Portfolio LLC v. Elpida Memory Inc.*,
   160 F. Supp. 3d 708 (D. Del. 2016).....................................................22

*Icon Health & Fitness, Inc. v. Polar Electro Oy*,
   656 F. App'x 1008 (Fed. Cir. 2016) .....................................................30

*IGT v. Bally Gaming International, Inc.*,
   659 F.3d 1109 (Fed. Cir. 2011) .............................................................8

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004) .............................................................4

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014) .................................................4, 26, 28

*IQASR LLC v. Wendt Corp.*,
   825 F. App'x 900 (Fed. Cir. 2020) .................................................................26

*Kaavo Inc. v. Amazon.com Inc.*,
   2018 WL 3025040 (D. Del. 2018) .................................................................25

*Kaken Pharmaceutical Co. v. Iancu*,
   952 F.3d 1346 (Fed. Cir. 2020) ...................................................................12

*Koninklijke Philips N.V. v. Zoll Medical Corp.*,
   656 F. App'x 504 (Fed. Cir. 2016) ...............................................................31

*Kroy IP Holdings, L.L.C. v. Autozone, Inc.*,
   2014 WL 7336234 (E.D. Tex. 2014) ...........................................................25

*In re Marosi*,
   710 F.2d 799 (C.C.P.A. 1983) .....................................................................31

*Merck & Co. v. Teva Pharmaceuticals USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005) ...................................................................29

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ........................................................................4, 24, 27

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) .....................................................................1

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
   845 F. App'x 943 (Fed. Cir. 2021) ...............................................................23

*Pacing Technologies, LLC v. Garmin International, Inc.*,
   778 F.3d 1021 (Fed. Cir. 2015) .....................................................................4

*Personalized Media Communications, LLC v. Apple Inc.*,
   952 F.3d 1336 (Fed. Cir. 2020) ...................................................................13

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .................................................................3, 4

*Rail Assets, LLC v. Wabtec Corp.*,
   2021 WL 702434 (W.D. Pa. 2021) ..........................................................22, 23

*Rexnord Corp. v. Laitram Corp.*,
274 F.3d 1336 (Fed. Cir. 2001) ........................................................................4, 8

*Sandvik Intellectual Property AB v. Kennametal, Inc.*,
2012 WL 3028028 (W.D. Pa. 2012) ...................................................................25

*SIPCO, LLC v. Emerson Electric Co.*,
794 F. App'x 946 (Fed. Cir. 2019) ...............................................................3, 19

*Synchronoss Technologies, Inc. v. Dropbox, Inc.*,
987 F.3d 1358 (Fed. Cir. 2021) .........................................................................35

*Verizon Services Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007) .........................................................................11

*Vivid Technologies, Inc. v. American Science & Engineering, Inc.*,
200 F.3d 795 (Fed. Cir. 1999) .............................................................................2

## Statutes

35 U.S.C. § 112(b) ........................................................................................................3

35 U.S.C. § 311(b) ........................................................................................................2

## Other Authorities

MPEP § 2173.05(b)(III)(B) .......................................................................................31

I.      **INTRODUCTION**

Despite representing to the Court in opposition to Defendants' motion for judgment on the pleadings that the '617 patent claims need to be construed before the Court could find the claims directed to unpatentable subject matter, D.I. 55, at 7-10, Plaintiff now contends that not a single term requires construction. According to Plaintiff, the disputed claim terms "are readily understood by persons of ordinary skill in the art" and should be construed according to their "plain and ordinary meaning." D.I. 89 ("Br.") 1-2. But Plaintiff's inconsistent positions and the parties' competing constructions reveal that the disputed terms are not in fact readily understood. And, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Thus, while Plaintiff undoubtedly prefers that the claim terms be left open-ended so that it can make any infringement and validity argument it pleases to the jury, Plaintiff's bare reliance on the terms' "'ordinary' meaning does not resolve the parties' dispute" and should be rejected. *Id.* at 1361.

Defendants' constructions provide much-needed clarity to the patent claims—some of which span dozens of lines—so that the jury can understand the scope of the claims as read by a person of ordinary skill in the art ("POSA") in view of the specification, file history, and relevant extrinsic evidence. Plaintiff's

alternative constructions, by contrast, are based on a convoluted reading of the claims, as well as a willful blindness of the '617 patent's goal and the established meaning of certain technical terms (on which Plaintiff's expert opines without citing to any extrinsic evidence for support).

Plaintiff also tries to use its "plain and ordinary meaning" constructions to avoid a finding that certain terms are indefinite. But Plaintiff tellingly does not proffer its own constructions for these terms, and its invocation of "plain and ordinary meaning" is not a "get out of jail card." Given the ambiguity in the claims and the lack of guidance in the specification, the disputed terms fail to convey to a POSA their scope with reasonable certainty. They are therefore indefinite.

Defendants thus respectfully request that the Court adopt the constructions and positions set forth herein.[1]

## II.   **BACKGROUND**

The '617 patent is directed to "eliminating contraband in postal mail at a correctional facility." '617 patent, 1:17-22, 1:43-45, 12:2-3, 13:13-14 (Ex. B). The

---

[1]  Consistent with its past submissions to the Court, Plaintiff points to IPR petitions filed by a third party as having some bearing on the issues here. Br. 1. This is a red herring. Only claim terms "that are in controversy" need to be construed, "and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). Constructions for the disputed terms here were not required to resolve the parties' dispute in the IPR review proceeding, which related *solely* to validity. Further, IPR review proceedings are restricted to invalidity arguments based on prior art, 35 U.S.C. § 311(b), and so petitioners cannot make indefiniteness arguments.

patent purports to do this by having an offsite "central facility"—rather than the correctional facility itself—process the mail and present scanned electronic copies to inmates via kiosks. *Id.* 1:43-2:6, 4:52-60. By "delivering electronic copies to inmates as opposed to physical copies," the patent purports to eliminate, "for all practical purposes," the "possibility of any contraband reaching the inmate." *Id.* 4:9-23. The patent explains that a benefit of its purported invention is that scanned documents can be rendered text-readable—*e.g.*, through optical character recognition—so that keywords can be searched and flagged. *Id.* 4:29-39, 10:6-20.

A more detailed summary of the '617 patent, file history, and claims appears in the declaration of John Tinsman (Ex. A).

## III.   <u>LEGAL STANDARD</u>

A patent claim must recite with particularity the subject matter which the inventor regards as the invention. 35 U.S.C. § 112(b). To construe a claim limitation, a court must determine the term's meaning to a POSA in view of the patent's specification, file history, and, where appropriate, extrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

The claim language itself is the starting point for construing the claims. *Braintree Lab'ys, Inc. v. Novel Lab'ys, Inc.*, 749 F.3d 1349, 1354 (Fed. Cir. 2014). Each word should be afforded weight, and different words are presumed to have different meanings. *SIPCO, LLC v. Emerson Elec. Co.*, 794 F. App'x 946, 949

(Fed. Cir. 2019). By contrast, when the same words are recited within a claim, they are generally presumed to have the same meaning. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). The specification is likewise "always highly relevant to the claim construction analysis." *Phillips*, 415 F.3d 1314. But, although claims must be construed consistent with the specification, "every claim does not need to cover every embodiment" disclosed in the specification. *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1026 (Fed. Cir. 2015).

If a court concludes by clear and convincing evidence that a claim "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention," the claim is invalid as indefinite. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Under this standard, terms are indefinite if their scope "depends on the unpredictable vagaries of any one person's opinion." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

## IV.      LEVEL OF ORDINARY SKILL

"A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). Defendants submit that a POSA would have had a Bachelor of Science degree in Computer Science, Computer Engineering, Electrical Engineering, or an equivalent field such as Physics, as well as at least 3-4 years of

academic or industry experience in electronic scanning, storing, and/or

communications, or comparable industry experience. Tinsman Decl. ¶ 30.

## V.    ARGUMENT

### A.    Claim Constructions

#### 1.    "Remote Kiosk" Terms

| Disputed Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| remote kiosk (claim 1) | Plain and ordinary meaning; needs no construction. If held to need construction, then: *"kiosk in a different physical location than a server with which it communicates"* | *a computer terminal physically located in a different location than the central facility* |
| a remote kiosk capable of receiving and sending electronic mail (claim 1) | Plain and ordinary meaning; needs no construction. If held to need construction, then: *"a kiosk in a different physical location than a server with which it communicates that is capable of receiving and sending electronic mail"* | *a computer terminal physically located in a different location than the central facility having dedicated hardware and/or software for receiving and sending electronic mail* |
| an inmate kiosk in a remote correctional institution capable of receiving and sending electronic mail (claim 13) | Plain and ordinary meaning; needs no construction. If held to need construction, then: *"a kiosk accessible by an inmate in a correctional facility in a different physical location from the server that is capable of receiving and sending electronic mail"* | *a computer terminal in a correctional institution that is physically located in a different location than the central facility having dedicated hardware and/or software for receiving and sending electronic mail* |

| Disputed Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| email kiosk (claim 5) | Plain and ordinary meaning; needs no construction. If held to need construction, then: *"a kiosk capable of receiving and sending email"* | *computer terminal also having dedicated hardware and/or software for providing access to said inmate email account* |

The parties dispute several claim limitations reciting a "remote" "kiosk" on which inmates can view scanned postal mail. That dispute requires the Court to determine what the following terms mean: (a) "kiosk," (b) "remote," and (c) "capable of receiving and sending" electronic mail.

### a.     "kiosk"

Defendants' construction of "kiosk" as "a computer terminal" seeks to clarify what that term means in the context of the claimed invention. Plaintiff's construction, by contrast, amounts to no construction at all and thus invites confusion and ambiguity at trial.

Defendants' construction finds direct support in the '617 patent itself. The specification states that scanned postal mail "is delivered to inmates through *computer terminal, which may conveniently be a kiosk*." '617 patent, 6:67-7:2 (emphasis added). Indeed, the patent repeatedly refers to "kiosks" and "portable devices" as examples of "computer terminals" used to display scanned mail. *Id.* 7:12-23 (referring to "a computer terminal (*e.g.*, a kiosk within the correctional facility)"), 10:53-57 (noting that kiosks and "portable devices" are "examples of

computer terminals"), 11:17-19 (same). Thus, Defendants' construction clarifies that all kiosks are necessarily "computer terminals."

Plaintiff's construction, by contrast, does little to advance the Court's (or a jury's) understanding of what a kiosk might be and instead reuses the word "kiosk," which alone is a red flag. Rather than proffering affirmative support for its own (non-)construction, Plaintiff criticizes Defendants' construction as unduly "restrict[ive]." Br. 7. But, as described above, the specification makes clear that a kiosk is a species of computer terminal. Thus, Defendants' construction cannot possibly *narrow* the claims, as Plaintiff alleges.

Adding further confusion, Plaintiff's construction does not resolve the ambiguity as to whether a "kiosk" would include a portable device. Claim 15 requires that the claimed kiosk "comprises a mobile device," but the specification consistently lists "kiosks" separately from "portable devices" (such as mobile devices). Thus, it remains unclear whether (and what) non-fixed devices could be a kiosk according to Plaintiff's construction. Defendants' proposed construction, by contrast, reconciles this ambiguity by clarifying that a kiosk—as a computer terminal—would encompass portable devices such as mobile devices. *See* '617 patent, 6:67-7:7 ("computer terminal 400, which may conveniently be a kiosk, … [or] a portable device"), 11:73-29 ("It will be understood that inmate kiosk(s) 950 and inmate portable device(s) 960 are examples of computer terminals").

### b.   "remote"

The parties agree that the claimed kiosks must be located at the correctional facility and that the concept of "remoteness" requires physical separation between the kiosks and some reference point. The only dispute between the parties is what that reference point must be.

Defendants' construction requires the kiosk to be physically separated from the "central facility," which derives from a straightforward reading of the claims in light of the '617 patent's stated goal of preventing contraband from entering a prison. Plaintiff, by contrast, contends that the kiosk must be separated from "a server with which it communicates." That construction is based on a convoluted reading of the claims and leads to illogical results.

The plain language of the claims supports Defendants' construction. The claims recite "one or more *remote correctional facilities*" and, in the very next breath, recite "a *central facility*." It is clear from this context that the word "remote" refers to separation between the correctional facilities and the central facility. *IGT v. Bally Gaming Int'l, Inc.*, 659 F.3d 1109, 1117 (Fed. Cir. 2011) ("[C]laim language must be construed in the context of the claim in which it appears."). Further, the word "remote" must be understood to have the same meaning throughout the claim. *Rexnord*, 274 F.3d at 1342 ("[A] claim term should be construed consistently with its appearance in other places in the same claim or

8

in other claims of the same patent."). Thus, a "remote kiosk" must be one that is physically separated from the central facility.

This interpretation is consistent with the '617 patent's specification. As Plaintiff and its expert acknowledge, Souri Dep. Tr. 267:20-268:7 (Ex. C), the patent repeatedly refers to the goal of its purported invention as preventing contraband from entering a prison, '617 patent, 3:59-4:15, 6:14-18. That goal can only be accomplished if the place where the mail is processed (*i.e.*, the central facility) is not itself located in the prison (where the scanned mail is viewed by inmates). This is shown in the patent's Figure 3 embodiment:



The central facility (*i.e.*, "mail processing center") is physically separated from the correctional facilities for whom the central facility processes mail. The '617 patent explains that this arrangement increases "security enhancement" because it

prevents mail—and thus any contraband within the mail—from ever entering the prisons in the first place. *Id.* Fig. 3, 2:27-31, 4:52-60, 7:65-8:14.

The claims are clearly intended to cover this embodiment, as the prosecution history demonstrates. As originally filed, the claims recited a single "correctional facility" and a "kiosk." SC-York-00000109-113 (Ex. D). But, to overcome a rejection based on prior art, the applicant amended the claims to replace "correctional facility" with "one or more remote correctional facilities" *and* to replace "kiosk" with "remote kiosk." *See* SC-York-00000297-298 (Ex. D). By inserting "remote" in both places at the same time, the applicant clearly intended for the term to carry the same meaning in both places, as described above. Equally as important, by replacing "correctional facility" with "*one or more remote correctional faciliti*es*,*" the applicant intended to narrow the claim scope to cover the Figure 3 embodiment, in which a single, offsite central facility "receives postal mail for … a plurality of correctional facilities." '617 patent, 7:65-8:1.

If that were not enough, Defendants' construction is also supported by extrinsic evidence. Documents produced by Plaintiff in this case show that its *own* contraband-screening technology—which Plaintiff touts as practicing the claims of the '617 patent—processes "inmate postal mail *off-site* at [Plaintiff's] processing center" in Tampa, Florida. SC-York-00001244 (Ex. E) (emphasis added); SC-York-00006610 (Ex. F) ("These Centers provide your agency an *offsite remote*

*virtual mail room … .*" (emphasis added)); SC-York-00006614 (Ex. G); SC-York-00006620 (Ex. H); '617 patent, Fig. 4 (referring to Plaintiff's technology), 2:32-36 (stating that Figure 4 shows an embodiment of the invention).

By contrast, Plaintiff proposes a construction that is based on a tortured reading of the claims and willful blindness of the patent's purpose. According to Plaintiff, because the claims recite "databases" in addition to a "remote kiosk," and because a database could be located on an offsite server, the term "remote kiosk" *must* refer to the kiosk's location relative to such a server. Br. 5. This "logic" fails.

First, claim 1 does not recite a "server." Even if it did, the patent makes clear that the claimed databases[2] need not reside on a server and, even if they do, the server can reside *inside* the prison. '617 patent, 6:53-58, 11:8-13. Plaintiff's construction reads the local server embodiment out of the claims without any principled reason for doing so. *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007) ("We normally do not interpret claim terms in a way that excludes disclosed examples in the specification.").

Second, Plaintiff's construction is based on an interpretation of the claims in an irrelevant, "network-based distributed architecture" context. As described

---

[2] Notably, the claims recite *two* databases, a fact that Plaintiff's expert admitted he did not appreciate. Souri Dep. Tr. 96:17-98:6, 104:4-105:10; Tinsman Decl. ¶ 58. It is unclear which of the databases must be remote to the kiosk under Plaintiff's construction.

above, the '617 patent is directed toward preventing contraband from entering a prison, not a "network-based distributed architecture." A POSA would have recognized that it is the relative location of the central facility (where the mail is processed) that achieves that goal, not the relative location of databases or servers. Tinsman Decl. ¶ 60. Indeed, the '617 patent makes clear that the location of the servers is irrelevant to the patent's purpose. *See* '617 patent, 6:53-58 (invention may "be implemented in a *local, remote, or cloud-based data center*"), 8:8-11 (scanning stations may "*be physically within mail processing center, or remote from it, or cloud-based*" (emphases added)).

Third, Plaintiff's focus on the location of the server rather than the central facility leads to illogical results. Under Plaintiff's construction, the claims would cover a scenario in which the central facility is located onsite as long as the server is located offsite, *even though* contraband would necessarily enter the prison in that scenario. Additionally, under Plaintiff's construction, the claims would *not* cover a scenario in which the central facility is located offsite while the server is located onsite, *even though* contraband would *not* enter the prison. These results are incompatible with the '617 patent's stated purpose. *See Kaken Pharm. Co. v. Iancu*, 952 F.3d 1346, 1352 (Fed. Cir. 2020) ("A patent's statement of the described invention's purpose informs the proper construction of claim terms[.]").

While it is true that the '617 patent's Figure 2 embodiment shows a central

facility located at the prison, that embodiment is not covered by the claims, as demonstrated by the applicant's amendment during prosecution. *See Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1345 (Fed. Cir. 2020) ("Even where prosecution history statements do not rise to the level of unmistakable disavowal, they do inform the claim construction." (internal quotations omitted)). Indeed, as the patent notes, Figure 2 is inconsistent with the goal of increasing security and decreasing burdens on prison staff. '617 patent, 3:64-66 (in-house mail processing is "labor intensive, expensive, and time consuming"), 4:24-28 (off-site embodiment "reduc[es] manual labor"), 4:52-57 (cost savings and security enhancement is increased in embodiments where "multiple facilities ... receive postal mail at a central location"), 5:11 (off-site embodiment "reduce manual labor, and increase postal mail efficiency in correctional agencies").

Finally, Plaintiff contends that Defendants' construction of an "inmate kiosk" omits "inmate" from the construction altogether. Br. 12. But, the claim language immediately following the disputed term recites "wherein said recipient inmate may access said electronic copy through said kiosk," '617 patent, 14:11-12, and so Defendants' construction does not omit that information.

c.      **"capable of"**

Defendants' construction of "capable of receiving and sending electronic mail" as "having dedicated hardware and/or software" clarifies how a POSA would

interpret this deceptively broad term. Plaintiff's construction, by contrast, *further* broadens the term.

Defendants' construction properly recognizes that the claimed kiosk has a specific function it must perform—*i.e.*, "sending and receiving electronic mail." To perform that function, the kiosk must contain particular hardware and/or have software installed. Tinsman Decl. ¶¶ 67-70. Consistent with Defendants' construction, Plaintiff's expert acknowledged that "'capable of receiving and sending electronic mail' is merely a straightforward description of some functionality that *the kiosk must be able to perform*." Souri Decl. ¶ 60 (emphasis added).

Once again, rather than proffering support for its non-construction, Plaintiff criticizes Defendants' construction as unduly narrow and as purportedly limited to single-use kiosks. Not so. As Defendants' expert, Mr. Tinsman, explains, Defendants' use of the word "dedicated" in their construction has a well-known meaning in the context of computer networking and encompasses both single-use *and* multi-use kiosks. Tinsman Decl. ¶ 68 (quoting technical dictionary defining "dedicated" to mean "[d]esigned for a specific use or function"). But, regardless of what *else* the kiosks might do, they must have hardware and/or software sufficient to allow them to, at the very least, receive and send electronic mail.

Plaintiff's construction, by contrast, does nothing to inform the jury of how

the claimed kiosk is implemented. Indeed, Plaintiff's construction is unbounded in scope and, in theory, would cover *any* device as long as the device can be modified at some point in the future to perform such functionality. Plaintiff should not be permitted to leave this claim term open-ended so as to sweep in such computers.[3]

To support its argument, Plaintiff points to general "web-based email platforms" and "web browsers" that it alleges should be covered by the claims. Br. 9. But the '617 patent is clearly not intended to cover such things. A POSA would have understood that inmates within correctional facilities are not offered unfettered internet access. *Id.* ¶ 71. In fact, allowing such access would undermine the stated goal of the '617 patent of preventing inmates from gaining access to contraband such as pornography, criminal communications, etc. Further undermining Plaintiff's position, Plaintiff markets its SmartInmate™ Electronic Messaging System as "specifically designed for use in correctional facilities" and not as a general web browser. SC-York-00001247 (Ex. E).

---

[3]  Plaintiff argues that "[i]t is a much simpler inquiry to determine whether a kiosk is capable of receiving and sending electronic mail" than determining whether a kiosk has dedicated hardware and/or software. Br. 9. This may be true, but only because virtually *any* computer would be "capable of" receiving and sending electronic mail under Plaintiff's overbroad construction. And, that Defendants' construction may require "competing expert opinions over … whether a particular component meets that requirement," *id.* at 8-9, does not mean that the Court can discard the correct construction. Competing expert testimony regarding noninfringement is commonplace in patent litigation.

### 2. "Text-Readable" Terms

| Disputed Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| text-readable version (claims 1, 13) | Plain and ordinary meaning; needs no construction. If held to need construction, then: *"representation containing textual information associated with the electronic copy"* | *a representation of scanned postal mail in a text-format created using optical character recognition* |
| text-readable material (claim 17) | Plain and ordinary meaning; needs no construction. If held to need construction, then: *"textual content of a document"* | *information that is capable of being represented in a text-format created using optical character recognition* |

The claims recite a "text-readable version" of a scanned electronic copy of mail (claims 1, 13), as well as "text-readable material" within the electronic copy (claim 17). The parties agree that "text-readable version" should encompass a "representation" of some sort but disagree about what that representation is and how it is created. Defendants' constructions of these terms require creation "using optical character recognition," consistent with how a POSA would have understood the terms. Tinsman Decl. ¶¶ 79-83. Plaintiff's constructions, by contrast, merely require "textual" information or content "associated with" the electronic copy, and thus render the word "text-readable" meaningless.

Defendants' constructions are supported by the claims. Claim 13 requires that the central facility have "a scanning station configured to create an electronic

copy of said postal mail and *convert* said electronic copy to a text-readable version of electronic copy." '617 patent, 13:15-18 (emphasis added). This conversion allows the system to automatically "flag" documents based on keyword searches. *Id.* 10:16-20. Thus, a POSA would understand that a text-readable representation of the scanned postal mail is rendered using software. Tinsman Decl. ¶¶ 79-81.

The only software disclosed in the '617 patent that converts non-text-readable material into a text-readable version is optical character recognition ("OCR") software. '617 patent, 7:25-37. The specification states that "[o]ptical character recognition ... may be used to make the images text-searchable." *Id.* 7:25-37, 9:16-35 (describing using OCR "to enable searching"). This establishes that the "text-readable version" recited in claim 13 is a representation created using OCR. And, as Plaintiff and its expert concede, "text-readable version" should have the same meaning in claim 1 as it does in claim 13. Souri Decl. ¶ 17.

Plaintiff criticizes Defendants' construction as excluding "manual transcription." But the specification states that manual transcription should be used *only if* OCR *cannot* be used—*e.g.*, if the scanned mail contains illegible handwriting. '617 patent, 7:25-37. OCR is thus the default method for converting electronic copies to a text-readable version. This makes sense—the patent purports to alleviate mail-processing burdens by *eliminating* manual processes. *Id.* 3:59-66. Thus, while the claims do not exclude manual transcription, they require at least

OCR. This interpretation, moreover, is consistent with the plain meaning of "text-readable" in the art. As Mr. Tinsman explains, "text-readable" refers to the process of making an electronic document machine-readable by applying OCR. Tinsman Decl. ¶ 83. Defendants' construction of "text-readable version" is thus correct.

For these same reasons, Defendants' construction of "text-readable material" is also correct. Claim 17, which depends from independent claim 13, requires that the electronic copy contains "text-readable material." This language suggests that the claimed "text-readable material" must be material that allows for the electronic copy to be converted into a "text-readable version." Indeed, Plaintiff acknowledges that this must be correct. Br. 18 (stating that, because "the patent envisions the *possibility* of OCR," the scanned electronic copy "may contain textual content *to serve as the basis for*" OCR in the first place (second emphasis added)).

Plaintiff's constructions, by contrast, are overly expansive. For example, Plaintiff's construction of "text-readable version" sweeps in *any* representation that contains *any* "textual information," including not just textual information in the scanned electronic copy itself, but also information "*associated with* the electronic copy." According to Plaintiff, examples of such "associated" information include "name," date," "recipient," "sender," or "any other field associated with messages." Br. 14. But this construction cannot be correct for several reasons.

First, the "fields" cited by Plaintiff are not "versions" of the scanned

electronic document and thus cannot comprise the claimed "text-readable version." The word "version" suggests a re-creation of that which is being versioned. *See* The Authoritative Dictionary of IEEE Standards Terms, 1252 (Ex. I) (defining "version" as "release or complete re-release of a document"); Tinsman Decl. ¶ 77. By construing "text-readable version" to include information "associated with" an electronic copy, Plaintiff improperly reads the word "version" out of the claims.

Second, none of the enumerated fields has anything to do with converting a scanned document into a searchable one, which is what the term "text-readable version" is meant to convey. By construing "text-readable version" to include such fields, Plaintiff likewise reads the word "text-readable" out of the claims.

Third, the enumerated fields cannot comprise the claimed "text-readable version" because they are themselves independently recited in the claims. In addition to "text-readable version," claim 1 recites a "unique identifier" for the scanned electronic copy, the "date of receipt and each access to said electronic copy," and an email account or inmate identifier associated with the receipt of the electronic copy. That the inventor used different terminology to refer to such information indicates that the information does not comprise "text-readable version." *See SIPCO*, 794 F. App'x at 949 ("Because the patentee chose to use different terms ... , we presume that those two terms have different meanings.").

Plaintiff's construction of "text-readable material" is likewise unbounded in

scope. According to Plaintiff, "text-readable material" means "textual content "*of*"
a document. But this expansive interpretation cannot be correct, as it would
encompass not only textual content *within* a scanned document, but also
unspecified information *associated with* the document. Souri Decl. ¶ 90
("[T]extual content may represent other information fields relevant to the
electronic copy, such as the date, recipient, sender, or the like.") Much like
Plaintiff's construction for "text-readable version," its construction for "text-
readable material" finds no support in the specification (or in common sense).

### 3.   "inmate email account" (claims, 1, 13)

| Disputed Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| inmate email account | Plain and ordinary meaning; needs no construction. If held to need construction, then: *"an account for an inmate capable of receiving email"* | *an account that an inmate uses to view email messages* |

The parties agree that an "inmate email account" must be an account
associated with an inmate for receiving email, but they disagree about the
technological capability of the account. Defendants' construction of "inmate email
account" as "an account that an inmate uses to view email messages" provides a
straightforward interpretation of what the term means. Once again attempting to
broaden the scope of the claims, however, Plaintiff construes the term to mean "an
account for an inmate *capable of* receiving email."

Plaintiff interprets Defendants' construction as requiring "that an inmate actually use an account to *view* email messages." Br. 20. But Plaintiff misunderstands Defendants' construction. The construction merely conveys to a POSA that the claimed account must be one that an inmate *could* use to view email, *not* that the inmate *must* use the account to view email. The point is that the scanned mail must be associated with an inmate's actual, functioning email account. Tinsman Decl. ¶¶ 91-93.

Plaintiff's construction, by contrast, seeks to broaden the claims by inserting the phrase "capable of" so that the claims encompass *any* application that could, in theory, be modified at some point in time so as to receive email. For the reasons stated above, Plaintiff's broad interpretation cannot be correct. *Supra* pp. 13-15.

### 4. "pre-screening said sender for correspondence from legal counsel" (claim 8)

| Disputed Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| pre-screening said sender for correspondence from legal counsel | Plain and ordinary meaning; needs no construction. If held to need construction, then: *"screening for correspondence from legal counsel"* | *an initial screening at said central facility to identify communications from legal counsel that occurs before the step of screening said postal mail for contraband* |

Defendants' construction of "pre-screening said sender for correspondence from legal counsel" as "an initial screening at said central facility to identify

communications from legal counsel that occurs before the step of screening said postal mail for contraband" clarifies *where* and *when* the screening is performed. Plaintiff's construction as "screening for correspondence from legal counsel" (literally) rewrites the limitation to omit the prefix "pre" and creates confusion.

Claim 8 requires, through its dependence from claim 1, (1) "receiving postal mail at a central facility," (2) "screening said postal mail for contraband," and (3) "pre-screening said sender for correspondence from legal counsel." The prefix "pre" recited in claim 8 clearly indicates that the legal screening occurs *before* the contraband screening recited in claim 1. Tinsman Decl. ¶¶ 96-99; *Rail Assets, LLC v. Wabtec Corp.*, 2021 WL 702434, at *4 (W.D. Pa. 2021) (finding that "predetermined" in "predetermined period of time" "is meant to reflect that the amount of video capture will be decided beforehand"); *HSM Portfolio LLC v. Elpida Memory Inc.*, 160 F. Supp. 3d 708, 716 (D. Del. 2016) ("[T]he prefix 'pre-' in predetermined suggests that the factor must at least be capable of determination before some other event occurs. Were it capable of being determined at any time, the word 'predetermined' would have no purpose at all."). This is no different than a pre-boarding procedure used for boarding a plane. Pre-boarding allows military personnel and select others to board *before* the general boarding procedure begins.

The claim sequence recited above, moreover, makes clear that the pre-screening must occur at the central facility, where the mail is "received." This

reading is supported by claims 3-4 and 10. Claims 3-4 depend from claim 1 and refer to claim 1's "said *step of screening* said postal mail *at said central facility* for contraband." *Id.* 12:46-54 (emphases added). The claims thus expressly clarify that the step of "screening said postal mail" recited in claim 1 does in fact take place "at said central facility." And, because the pre-screening must occur before the contraband screening, it, too, must occur at the central facility.

Additionally, claim 10 depends from claim 8 and adds "the step of forwarding said correspondence to the institution housing said recipient inmate." *Id.* 13:4-6. The entity performing the pre-screening must forward correspondence to the correctional facility—that entity thus cannot itself be the correctional facility. Tinsman Decl. ¶¶ 100-102. If it were otherwise, claim 10 could never be satisfied. *Olaplex, Inc. v. L'Oreal USA, Inc.*, 845 F. App'x 943, 949 (Fed. Cir. 2021) (rejecting construction of limitation that would result in the claim limitation "never be[ing] satisfied").

Defendants' construction is also supported by the specification. As Plaintiff's own expert concedes, the specification states that mail from legal counsel is subject to "less screening" and thus need not be screened for contraband. Souri Decl. ¶¶ 120, 126; '617 patent, 4:62-66. It is common sense that, in order to determine whether legal mail can be exempt from contraband screening, the mail must be pre-screened to determine whether it was sent from counsel.

Plaintiff's construction, by contrast replaces "pre-screening" with "screening." Such rewriting of the claims is improper. *See Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("Courts cannot rewrite claim language."). And, while Plaintiff cites cases stating that "a patent claim need not occur in the order in which they appear in the claim," Br. 24, those same cases clarify that claims may, "as a matter of logic or grammar," require steps to be performed "in the order written." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003). That is so here. The prefix "pre" in "pre-screening … for correspondence from legal counsel" clearly requires, "as a matter of logic or grammar," that the screening occur before the contraband screening.

Finally, Plaintiff cites to a passage in the '617 patent that describes an alternative embodiment in which mail is automatically processed to preserve confidentiality, '617 patent, 7:47-54, apparently to suggest that such processing can occur at the correctional facility in the context of contraband screening, Br. 24-25. But, in the cited embodiment, there is no pre-screening for legal correspondence *at all*. Plaintiff's reliance on that passage is thus misplaced.

## B.    Indefinite Terms

Defendants contend that the claim terms below are indefinite because they "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901. Tellingly, Plaintiff cannot—or refuses

to—provide its interpretation of what these terms mean. *See Kaavo Inc. v. Amazon.com Inc.*, 2018 WL 3025040, at *3 (D. Del. 2018) (holding term indefinite where the patentee's expert testified "that a POSA would 'be able to understand the scope of the invention with reasonable certainty'" but the patentee was unable to "identify the purported 'plain and ordinary meaning'" of the term). Many of Plaintiff's arguments are tangential to the terms and are instead apparently intended to distract the Court from the relevant inquiry. All of these arguments fail.

First, Plaintiff suggests that it is improper for the Court to hold claims invalid as indefinite at the claim construction phase of the case. Br. 34-35. This is incorrect. An indefiniteness analysis "is inextricably intertwined with claim construction." *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999). Accordingly, "the determination of claim indefiniteness is a legal conclusion that is properly part of the Court's performance of its duty as the construer of patent claims" and is thus "properly part of claim construction at a *Markman* Hearing." *Sandvik Intell. Prop. AB v. Kennametal, Inc.*, 2012 WL 3028028, at *6 (W.D. Pa. 2012); *Kroy IP Holdings, L.L.C. v. Autozone, Inc.*, 2014 WL 7336234, at *15 (E.D. Tex. 2014) (Bryson, J., sitting by designation) ("Raising the issue of indefiniteness in the course of claim construction proceedings is appropriate."). And, indeed, the Federal Circuit routinely affirms indefiniteness rulings made during claim construction. *See, e.g.*, *Berkheimer v. HP*

*Inc.*, 881 F.3d 1360, 1363 (Fed. Cir. 2018); *Interval Licensing*, 766 F.3d at 1366.

Second, Plaintiff suggests that Defendants' indefiniteness arguments are undermined by the fact that Defendants proposed alternative constructions for the terms. Br. 2, 26. But it is black-letter law that "[e]ven if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 907-08 (Fed. Cir. 2020). Further, "[s]howing that a skilled artisan cannot recognize the scope of a claim term with reasonable certainty requires showing considerably less uncertainty than showing that a skilled artisan could not understand the claim term." *Id.* Thus, Defendants' alternative constructions do not establish that the terms are *not* indefinite.[4]

Finally, throughout its brief, Plaintiff suggests that Defendants should have provided detailed evidence and argument as to why the claim terms are indefinite in Defendants' preliminary invalidity contentions served more than four months ago. *See, e.g.*, Br. 30, 34. This is another red herring. Defendants' contentions,

---

[4]  Plaintiff alleges that it was prejudiced because Defendants identified these terms as "indefinite" rather than "terms requiring construction" in Defendants' List of Proposed Claim Terms. Br. 26 n.2. But it is unclear how this is improper or where the prejudice lies. On July 9, 2021, Defendants served their Preliminary Proposed Claim Constructions providing alternative constructions for these terms, Ex. J, and the parties thereafter met and conferred. Thus, Plaintiff was on notice of Defendants' alternative constructions for *six weeks* before filing its brief. In contrast, Plaintiff *still* has not identified what it contends any of these terms mean.

which are preliminary in nature, provided more than sufficient detail to put Plaintiff on notice as to the nature of Defendants' indefiniteness arguments (and, notably, Plaintiff never said otherwise until now). But the sufficiency of the contentions is not at issue here—the issue is whether the disputed claim terms "inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901. As described below, they do not.

### 1. "essentially eliminated" (claim 1)

| Disputed Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| essentially eliminated | This term is definite. | Indefinite, or *practically completely eliminated* |

The phrase "essentially eliminated" is a subjective term of degree that does not convey to a POSA its scope with reasonable certainty. The term is indefinite.

The claims do not shed any light on the term's meaning. Claim 1's preamble recites a "method for eliminating contraband," and yet, the inventor specified in the body of the claim that the method results in contraband being only "*essentially eliminated*." '617 patent, 12:2-3, 12:37-38 (emphases added).) This distinction indicates that "essentially" eliminating contraband is something *different* from "eliminating" contraband. Tinsman Decl. ¶ 106. But the claim itself does not indicate how the terms are different, other than to suggest that "essential[]" elimination" is something less than complete elimination. Notably, "essentially eliminated" is *not* recited in claim 13, which indicates that the term is intended to

alter the scope of claim 1 in some meaningful way. But, again, the claims provide no clarity as to how.

The '617 patent specification is likewise of no help. It uses the phrase "essentially eliminat[ed]" in just two places, neither of which clarifies what the term means. *Id.* ¶ 105; '617 patent, 5:61-63 (invention "*essentially eliminat[es]* the chance of any contraband reaching inmates through mail" (emphasis added)), 6:14-18 (converting mail to electronic form "*essentially eliminat[es]* the chance that mail contraband will reach the inmate" (emphasis added)). Without any guidance, the scope of "essentially eliminated" "depends on the unpredictable vagaries of any one person's opinion." *Interval Licensing*, 766 F.3d at 1371. This sort of subjectivity is precisely what renders many terms of degree indefinite. *See Berkheimer*, 881 F.3d at 1363 (holding "minimal redundancy" indefinite because the "language is not reasonably clear as to what level of redundancy in the archive is acceptable"); *Cayenne Med., Inc. v. Medshape, Inc.*, 2016 WL 2606983, at *6 (D. Ariz. 2016) (holding "substantially different construction" indefinite where a POSA could not determine "when the magnitude of change in the 'construction' … is no longer insubstantial but rather has become 'substantially' different").

Plaintiff insists that the term is not indefinite and yet does not state what it contends the term means. All that Plaintiff can muster is that the "specification provides a clear, objective basis to understand the scope of 'essentially

eliminated.'" Br. 28. But that bare assertion is belied by Plaintiff's own expert's testimony, which, as shown below, establishes that the specification neither provides an "objective basis" for understanding the term nor is "clear."

Dr. Souri acknowledged that eliminating *some* contraband does not necessarily satisfy the "essentially eliminated" limitation, Souri Dep. Tr. 44:1-9, but he could not articulate what the lower bound would be. He points to no quantitative metric, moreover, for measuring the efficacy of the claimed method. According to Dr. Souri, a skilled artisan would not "even contemplate considering things like quantitative measures and assigning a reasonable degree of certainty or uncertainty" to the method. *Id.* 246:15-18. But without a quantitative measure, it is unclear how "essentially eliminated" can be attributed *any* meaning. And every claim term must have *some* meaning. *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

Dr. Souri was likewise unable to articulate a *qualitative* measure for assessing whether the "essentially eliminated" limitation is satisfied. He testified at his deposition that "essentially eliminated" "is described in multiple locations in the specification and not limited to one particular description." Souri Dep. Tr. 247:15-22. He thus concluded that "it's not appropriate to limit 'essentially eliminated' to mean 'practically completely eliminated,'" as Defendants propose in

their alternative construction, because that construction "is not faithful to the way 'essentially eliminated' is described in the totality, in the entirety of the specification." *Id.* 245:10-12, 250:4-8. Although he seemed to acknowledge that Defendants' construction is a plausible one, he testified that it is not "the only way to understand 'essentially eliminated.'" *Id.* 241:7-8, 242:3-14. Dr. Souri's acknowledgement that the specification is itself internally inconsistent regarding what "essentially eliminated" means only further supports Defendants' position.

Indeed, over the course of his declaration and deposition, Dr. Souri characterized "essentially eliminated" numerous ways:

- "pertaining to the elimination of contraband from postal mail";
- "remov[ing] contraband for practical purposes";
- "alleviating contraband in prisons";
- "greatly reducing the risk of contraband entering the facility"; and
- "helping greatly reduce the risk" of contraband from entering the facility.

Souri Decl. ¶¶ 126, 129; Souri Dep. Tr. 37-41, 244:18-22, 252:21-253:8. That Dr. Souri's interpretation of this claim term is a moving target proves that the term is indefinite.[5] *Icon Health & Fitness, Inc. v. Polar Electro Oy*, 656 F. App'x 1008,

---

[5]  Notably, Plaintiff itself uses a different description altogether in marking its own technology, which it alleges practices the claims of the '617 patent. Plaintiff states that the claimed invention results in "100% contraband elimination." MailGuard® Postal Mail Elimination (Ex. K); Kevin Bliss, *Smart Communications Contract Reveals Plans for Expanding Privatized Prison Mail*, Prison Legal News (Aug.

1016 (Fed. Cir. 2016) (claims whose scope is "a moving target" are indefinite).

Unable to articulate what "essentially eliminates" means with reasonable clarity, Plaintiff seeks refuge in the Manual of Patent Examining Procedure ("MPEP") and an inapposite case. Br. 27-28. Neither supports Plaintiff's position. The cited MPEP section contains a two-sentence summary of a nearly forty-year-old case finding the term "essentially free of alkali metal" not indefinite in a different context and under an obsolete (and more rigorous) "insolubly ambiguous" standard. MPEP § 2173.05(b)(III)(B) (citing *In re Marosi*, 710 F.2d 799 (C.C.P.A. 1983)); *see Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 527 (Fed. Cir. 2016) (the pre-*Nautilus* "'insolubly ambiguous' standard is a harder threshold to meet than the post-*Nautilus* standard"). *Geodynamics, Inc. v. Dynaenergetics US, Inc.*, 2016 WL 6217181 (E.D. Tex. 2016), is likewise inapposite. There, the court held the phrase "eliminating a substantial portion" definite in the context of the oil-drilling patent at issue. In so holding, the court relied on a table of measurements cited in the specification that provided guidance as to claim scope. *Id.* at *13. No such guidance is provided in the '617 patent's specification.

In the alternative, if the Court does not find the claim term indefinite,

---

2021) (Ex. L);'617 patent, Fig. 4 (referring to Plaintiff's technology), 2:32-36 (stating that Figure 4 discloses an embodiment of the invention).

Defendants propose that the term be construed as "practically completely eliminated." That construction is supported by the specification, which states that the purported invention results in "a practically complete elimination of contraband in postal mail." '617 patent, 5:4-6; *see also id.* 4:15-16 ("The possibility of any contraband reaching the inmate is thereby eliminated for all practical purposes."). And, notably, in a parallel litigation in which Plaintiff has asserted the '617 patent against another prison, Plaintiff argued that the claimed method ensures that "the possibility of contraband reaching an inmate through the postal mail is *practically eliminated*." Ex. M, at 18.

### 2.   "an electronic copy of said electronic copy and said text readable version" (claim 1)

| Disputed Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| an electronic copy of said electronic copy and said text readable version | This term is definite. | Indefinite, or *an additional electronic copy of the scanned electronic copy and the text-readable version* |

The term "an electronic copy of said electronic copy and said text readable version" is likewise indefinite, as a POSA would not be able to discern the scope of the term with reasonable certainty.

The limitation refers to "an electronic copy of *said electronic copy* and said text-readable version." The phrase "said electronic copy" has no antecedent basis—*i.e.*, the claims do not recite "*an* electronic copy" standing alone—and so it

is unclear to what copy "said electronic copy" refers. *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526 (Fed. Cir. 2020) (noting that "[t]he lack of antecedent basis signals a potential indefiniteness problem"). As descried below, even assuming that "said electronic copy" refers to the previously recited "scanned electronic copy," the claim still fails to convey its scope with reasonable certainty.

Claim 1 requires storing electronic copies of two documents: (1) "said electronic copy," and (2) "said text-readable version." It then recites storing *additional* copies in the limitation at issue here: "storing an electronic copy of said electronic copy and said text-readable version for electronic transmission to said recipient inmate." This limitation seems to require *four* distinct copies (in addition to the two documents stored in the previous limitation). Tinsman Decl. ¶ 112. As Mr. Tinsman explains, that is not necessarily unusual given that electronic copies may be created during the act of transmission. *Id.* ¶ 113; Br. 30. But the '617 patent specification does not refer to four copies, and there is no obvious reason why so many copies would be required in the context of the claimed invention. Lacking reasonable certainty, this term is indefinite.

If not found indefinite, Defendants propose that the limitation be read to mean exactly what it says: storing an "additional electronic copy of the scanned electronic copy and the text-readable version." This construction is supported by Plaintiff's own concession that "electronic copies may be created that are

comprised of electronic copies themselves." Br. 30.

>    **3.**    **"wherein said scanned electronic copy and said text-readable version are stored electronically in a database using the inmate identifier as the primary key" (claim 1)**

| Disputed Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| wherein said scanned electronic copy and said text-readable version are stored electronically in a database using the inmate identifier as the primary key | This term is definite. | Indefinite, or *wherein said scanned electronic copy and said text-readable version are stored electronically in a database using the inmate identifier as a unique identifier for said postal mail* |

The limitation "wherein said scanned electronic copy and said text-readable version are stored electronically in a database using the inmate identifier as the primary key" is indefinite, as it conflicts with the well-established technical meaning of "primary key" and does not suggest what other definition could apply.

Claim 1 recites "the primary key," without providing any antecedent basis therefor, and the term itself appears nowhere in the specification. In the absence of any guidance from the patent, a POSA would turn to how the term would be understood in the art. As Mr. Tinsman explains, in database applications, "'primary key' is well understood to mean a 'field that serves as the *unique identifier*' of a record within the database." Tinsman Decl. ¶ 120 (quoting Microsoft Computer Dictionary 419 (5th ed. 2002)). In short, a primary key allows a user to find a specific record within a database using *only* the primary key. *Id.*

34

Applying this standard definition to the claims, the inmate identifier must be used to uniquely identify particular pieces of postal mail for an inmate. This is problematic, however, because, as Plaintiff and Dr. Souri acknowledge, the inmate identifier alone cannot uniquely identify a particular piece of postal mail for an inmate in certain scenarios—*e.g.*, when the inmate has more than once piece of mail. *Id.* ¶ 121; Br. 32; Souri Decl. ¶ 143. This illogical result suggests that the inventor may have intended a different meaning. But, because the patent provides no clarity as to what that meaning could be, a POSA would be unable to ascertain the scope of the limitation with reasonable certainty. *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1366-67 (Fed. Cir. 2021) (holding claims indefinite where they "are nonsensical and require an impossibility," and noting that "it is not our function to rewrite claims to preserve their validity").

Dr. Souri acknowledges that "the use of a 'primary key' is a standard practice for relational databases," Souri Decl. ¶ 141, and yet Plaintiff's analysis is inconsistent with that practice. According to Plaintiff, "primary key" can consist of multiple attributes and multiple keys. Br. 33. But that interpretation is contrary to the term's well-known meaning. Tinsman Decl. ¶ 120. And, although a primary key can generally comprise more than one attribute, the '617 patent claims refer to only a single attribute: "the inmate identifier." *Id.* ¶ 126. Further, although some database systems can use multiple keys, the '617 patent nowhere describes such a

system. The claims recite a "primary" key, and as Mr. Tinsman explains, there can only be *one* such key. *Id.* ¶¶ 125-127. Plaintiff's interpretation of "primary key" as comprising multiple keys thus reads the word "primary" out of the claims.

If the term is not found indefinite, Defendants propose that the term be construed to simply replace "primary key" with its well-established definition—*i.e.*, "a unique identifier for said postal mail." Without a construction for this term, the jury might be led to believe that "primary key" is a non-technical term that imposes no meaningful limitation on the claims. As described above, the term *is* technical in nature and should be construed consistent with its technical meaning.

### 4.   "scanning station with an input interface adapted to …"

| Disputed Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| said scanning station with an input interface adapted to attach recipient inmate information said electronic copy and said text-readable version of said postal mail (claim 13) | This term is definite. | Indefinite, or *scanning station having an interface that allows a user to input one or more commands that initiate the process of attaching recipient inmate information to said electronic copy and said text-readable version of said postal mail* |
| said scanning station with an input interface adapted to … create associations between said electronic copy and said text-readable version and the | This term is definite. | Indefinite, or *scanning station having an interface that allows a user to input one or more commands that initiate the process of creating an association* |

| Disputed Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| associated inmate identifier associated with an inmate email account for an inmate at a correctional institution (claim 13) | | *between said electronic copy and said text-readable version and the associated inmate identifier associated with an inmate email account for an inmate at a correctional institution* |

The terms "said scanning station with an input interface adapted to …" are indefinite because "an input interface adapted to" does not provide a POSA with reasonable certainty regarding the scope of the claims.

The '617 patent is silent as to what an "input interface adapted to" attach recipient information and create associations means, stating only that such an interface is "not illustrated" in the patent's figures. Tinsman Decl. ¶ 130; '617 patent, 8:65-9:3. Plaintiff argues that the term is "readily understood" by a POSA "to require that the scanning station be *capable*—either with a degree of autonomy enabled by software or through manual actions of an operating use—*of* collating together" recipient information for a piece of mail with the corresponding electronic copy of that mail. Br. 33 (emphases added). According to Plaintiff, the limitation does not "limit[] how the interface may be implemented," and the interface can "be implemented in a *number of ways and may change over time*." *Id.* (emphasis added). In other words, consistent with its approach for the "remote kiosk" terms, Plaintiff reads the claims as broad enough to cover a scanner that is

37

hypothetically capable of performing the claimed function. The claims cannot be so expansive in scope. But without guidance from the specification, a POSA would not be able to discern the scope of this claim term with reasonable certainty.

Plaintiff also points to passages of the '617 patent referring to "associat[ing] the electronic image or version to an inmate email account" and scanners that may include software that "prompt[s] the user … for the inmate's identification." Br. 35-36 (quoting '617 patent, 6:38-48). But those passages do not specify *how* the association is accomplished using the "input interface." And, the passages, which refer to a user being "prompt[ed]" for information, belie Plaintiff's argument that "a user may not have to initiate commands for the functionality to occur." *Id.* at 36.

If not found indefinite, Defendants propose that the Court interpret "an input interface adapted to" to mean "an interface that allows a user to input one or more commands that initiate the process of." Tinsman Decl. ¶ 131. Plaintiff objects to the construction as limiting the claims to a "user" initiating the functionality through "commands," Br. 34, but the claim terms themselves recite an "*input* interface." The word "input" indicates that the interface contains functionality that would allow a user to make an input (*i.e.*, enter commands).

## VI.    <u>CONCLUSION</u>

For the reasons stated above, Defendants respectfully request that the Court adopt their constructions and positions.

Dated: September 17, 2021                    Respectfully submitted,

                                            CGA Law Firm

                                            By: */s/ Jack M. Hartman*
                                            (signed with permission)
                                            Jack M. Hartman, Esquire
                                            PA ID 21902
                                            135 North George Street
                                            York, PA 17401
                                            Phone: (717) 848-4900
                                            Fax: (717) 843-9039
                                            Email: jhartman@cgalaw.com


                                            Michael D. Specht
                                            Uma Everett
                                            Ryan Richardson
                                            Richard Crudo
                                            Sterne, Kessler, Goldstein & Fox
                                            P.L.L.C.
                                            1100 New York Avenue NW, Suite 600
                                            Washington, DC 20005
                                            (202) 371-2600
                                            mspecht@sternekessler.com
                                            ueverett@sternekessler.com
                                            rrichardson@sternekessler.com
                                            rcrudo@sternekessler.com

                                            *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that on September 17, 2021, a true and correct copy of the

foregoing Defendants' Response to Plaintiff's Opening Claim Construction Brief

was served via ECF on counsel of record.

<div style="margin-left: 50%;">

*/s/ Uma Everett*

Uma N. Everett
STERNE, KESSLER, GOLDSTEIN
& FOX P.L.L.C.
1100 New York Avenue, NW
Washington, D.C. 20005
(202) 772-2600
ueverett@sternekessler.com

*Attorneys for Defendants*

</div>