## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HLFIP HOLDING, INC. d/b/a SMART COMMUNICATIONS IP HOLDINGS, | : | Civil No. 1:20-CV-00186 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| YORK COUNTY, PENNSYLVANIA, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is Defendants' motion for judgment on the pleadings. (Doc. 46.)  Defendants argue that the patent at issue claims patent-ineligible subject matter pursuant to 35 U.S.C. § 101.  Applying the standard established by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank International*, this court finds that the claims at issue are directed to an abstract idea and Plaintiff has not adequately alleged an inventive concept sufficient to survive a motion for judgment on the pleadings.  For the reasons that follow, the court will grant Defendants' motion.  (Doc. 31.)

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action arises from Defendants' alleged infringement of Plaintiff's patented MailGuard technology.  (Doc. 1, ¶ 1.)  Specifically, the complaint alleges that Defendants engaged TextBehind, Inc. to provide services and technology to eliminate the original postal mail addressed to inmates at York County Prison

("YCP") by scanning the mail and distributing it electronically to inmates utilizing technology that infringes on Plaintiff's MailGuard technology. (*Id.* ¶ 17–19.) On the basis of these facts, Plaintiff filed a two-count complaint on February 3, 2020, alleging patent infringement and deprivation of federal rights. (Doc. 1.) Count one of the complaint sets forth a claim for patent infringement under 35 U.S.C. § 271 of Plaintiff's Patent Number: US 10,291,617 ("'617 Patent"). (*Id.*)

The following facts are gleaned from Plaintiff's complaint and the '617 Patent attached thereto for the purpose of ruling on Defendants' motion for judgment on the pleadings. Plaintiff HLFIP Holding, Inc., doing business as Smart Communications IP ("Smart Communications"), is the record title owner of the '617 Patent. (Doc. 1, ¶ 10.) The '617 Patent was filed on May 12, 2016, and issued on May 14, 2019, with the title of "Correctional Postal Mail Contraband Elimination System." (*Id.*, ¶ 10; Doc. 1-2, p. 2.)[1] Summarizing the background of the '617 Patent, Smart Communications avers that: "[p]ostal mail is the number-one method for sneaking illegal drugs, contraband, and secret communications into correctional facilities." (Doc. 1, ¶ 14.) As a result, "the elimination of postal mail is critical to the safe operation of correctional facilities in that it significantly reduces, and in many cases altogether stops, the infiltration of those undesirable and potentially dangerous items." (*Id.*)

---

[1] For ease of reference, the court utilized the page numbers in the CM/ECF header.

The abstract of the '617 Patent describes it as follows:

A method and system for eliminating contraband in postal mail at a correctional facility comprising a central processing facility and a network of inmate email kiosks and correctional institution staff review stations. The postal mail utilizes scanning stations to create electronic version of the mail and associates various information about the sender, recipient, mail contents, and institution into a format that is easily reviewable and provides tracking data. The scanned mail may then be made available to the intended inmate and institution staff. Institution staff may also then access the associated information and tracking data.

(Doc. 1-2, p. 2.)

The amended complaint alleges infringement of claims 1 and 13 of the '617

Patent. (See Doc. 1.) Independent Claim 1 provides:

A method for eliminating contraband in postal mail for one or more remote correctional facilities comprising, receiving postal mail at a central facility; identifying mail information comprising recipient inmate and inmate institution; identifying an inmate email account and the associated inmate identifier; identifying content information; associating said sender information and said content information with said inmate identifier; screening said postal mail for contraband; scanning said content information and sender information and generating a scanned electronic copy and a text-readable version of said electronic copy wherein said scanned electronic copy and said text-readable version are stored electronically in a database using the inmate identifier as the primary key; storing an electronic copy of said electronic copy and said text-readable version for electronic transmission to said recipient inmate; associating a contraband flag with said electronic copy and said text-readable version; associating said electronic copy and said text-readable version with an access flag, said access flag denies access to said inmate to said electronic copy and said text-readable version based on content or information contained in said electronic copy and said text-readable version; associating said electronic copy with said inmate email account and the associated inmate identifier; assigning the electronic copy with an unique identifier; presenting said electronic copy for review by institution

staff; determining access to said electronic copy by said recipient inmate wherein access may be granted or denied based upon whether contraband was discovered in said postal mail; displaying postal mail to said recipient inmate associated with said inmate identifier on a remote kiosk capable of receiving and sending electronic mail; and logging the date of receipt and each access to said electronic copy by said recipient inmate or said institution staff; wherein the risk of said recipient inmate receiving contraband in postal mail is essentially eliminated.

(Doc. 1-2, p. 27.)  Claim 13 is a system claim which mirrors the method claim 1.

Claim 13 provides:

A system for eliminating contraband in postal mail for one or more correctional facilities comprising: receiving mail at a central facility, said central facility having a scanning station configured to create an electronic copy of said postal mail and convert said electronic copy to a text-readable version of electronic copy, said scanning station with an input interface adapted to attach recipient inmate information said electronic copy and said text-readable version of said postal mail and said electronic copy being assigned an unique identifier; and create associations between said electronic copy and said text-readable version and the associated inmate identifier associated with an inmate email account for an inmate at a correctional situation, said electronic copy also having an unique identifier assigned to the electronic copy, a record of the sender of the postal mail, and a log comprising the date and time the postal mail was scanned and said interface capable of associating said electronic copy and said text-readable version with an access flag, said access flag denies access to said inmate to said electronic copy and said text-readable version based on content or information contained in said electronic copy; a server in communication with said scanning station and a network wherein said scanning station communicates said electronic copy and said log to said server over said network and said server store said electronic copy and said log; an inmate kiosk in a remote correctional institution capable of receiving and sending electronic mail in communication with said server over a kiosk network wherein said recipient inmate may access said electronic copy through said kiosk, said kiosk being adapted to cause said server to log access of said electronic copy by said inmate

using their unique inmate identifier; and a viewing station in communication with said server wherein correctional facility personnel may screen said electronic copy prior to allowing access by said inmate.

(*Id.*, p. 28.)

Smart Communications asserts that Defendants are utilizing TextBehind's

postal-mail-elimination methods and systems, which infringe on the '617 Patent

because it includes at least the steps of:

> (1) [R]eceiving postal mail and associating that mail with an intended inmate recipient; (2) screening the postal mail for contraband; (3) scanning the postal mail; (4) generating a text-readable electronic copy of the scanned postal mail for investigative and inmate-delivery purposes; (5) electronically storing the electronic copy of the scanned postal mail for storage and review by YCP personnel; (6) flagging the electronic copy of the postal mail if it is found to contain contraband or other inappropriate content; (8) electronically delivering approved copies of the scanned postal mail to the intended inmate recipient for viewing on a remote kiosk; and (9) logging details relating to the inmate recipient's access and review of the electronic copy of the scanned postal mail.

(Doc. 1, ¶ 27.)  Smart Communications also asserts that the TextBehind system

Defendants are using is infringing on the '617 Patent because it contains the

following components:

> (1)[A] scanning station capable of creating a text-readable electronic copy of postal mail, and including an input interface capable of (a) attached recipient-inmate information to the electronic copy of the postal mail and associating the electronic copy of the postal mail with an email account belonging to the intended inmate recipient, and (b) associating the electronic copy of the postal mail with an access flag that denies access to the intended inmate recipient if the electronic copy of the postal mail contains contraband or other inappropriate content; (2) a server in communication with the

scanning station and a network, such that the scanning station communicates the electronic copy of the postal mail and its identifying information to the server for storage; (3) a remote kiosk in communication the server that is capable of sending and receiving electronic mail, through which the intended inmate recipient can access the electronic copy of the postal mail; and (4) a viewing station in communication with the server, through which YCP personnel can screen and review the electronic cop of the postal mail prior to delivery to the intended inmate recipient.

(*Id.*, ¶ 28.)

Smart Communications alleges that Defendants have been and are inducing infringement of the '617 Patent by actively and knowingly including others—here, personnel at York County Prison ("YCP")—to use the TextBehind postal-mail-elimination methods and systems. (*Id.*, ¶ 29.) Additionally, Smart Communications alleges that Defendants have done so with knowledge of the '617 Patent since as early as January 7, 2020, when a letter was sent to Warden Doll advising him of the alleged infringement and attaching a copy of the '617 Patent. (*Id.*, ¶¶ 29, 33.)

Defendants filed the instant motion for judgment on the pleadings and a supporting brief on February 10, 2021. (Docs. 46 & 47.) Plaintiff timely filed a brief in opposition. (Doc. 55.) Defendants then filed a reply brief. (Doc. 58.)[2] Thus, the motion is now ripe for resolution.

---

[2] Defendant also submitted a notice of supplemental authority on April 8, 2022. (Doc. 129.) The supplemental authority is a decision from the United States Court of Federal Claims in which the defendant's motion for summary judgment arguing patent ineligibility pursuant to 35 U.S.C. § 101 was granted because the plaintiff's patent claims were directed to the abstract idea of

### JURISDICTION

Because this case raises a federal question of patent infringement under 35 U.S.C. § 271, the court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Further, venue is appropriate under 28 U.S.C. §§ 1391 and 1400(b).

### STANDARD OF REVIEW

A motion for judgment on the pleadings is the procedural hybrid of a motion to dismiss and a motion for summary judgment.  *Westport Ins. Corp. v. Black, Davis, & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007).  Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Under Rule 12(c), judgment should be granted where:

> the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.  In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.  In this fashion the courts hope to insure that the rights of the nonmoving party are decided as fully and fairly on a rule 12(c) motion, as if there had been a trial.

*Inst. for Scientific Info., Inc. v. Gordon & Breach Sci. Publishers, Inc.*, 931 F.2d 1002, 1004 (3d Cir. 1991) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045,

---

processing undeliverable mail and providing an updated address.  *See Return Mail, Inc. v. United States*, No. 11-130C, 2022 U.S. Claims LEXIS 567 (Fed. Cl. Apr. 6, 2022).

1054 (3d Cir. 1980); 5C Charles A. Wright & Arthur R. Miller, FED. PRACTICE AND PROCEDURE, § 1367, at 205 (3d ed. 2004)).

Thus, judgment on the pleadings will be granted where the movant clearly establishes no material issue of fact and entitlement to judgment as a matter of law. *Id.*; *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir.1988) (quoting *Soc'y Hill Civic Ass'n*, 632 F.2d at 1054).

A court deciding a motion under Rule 12(c) "must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non-moving party.'"  *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001) (quoting *Inst. for Scientific Info.*, 931 F.2d at 1004).

## DISCUSSION

In their motion, Defendants argue that the court should dismiss the complaint because the '617 patent claims patent-ineligible subject matter—an abstract idea—under 35 U.S.C. § 101.  (Doc. 46.)

### A. Patent Eligibility Standard

Section 101 provides, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  There are three subject matter

categories that are patent ineligible: laws of nature, natural phenomena, and abstract ideas.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

Because patent eligibility under section 101 is a question of law, it can be determined at the motion to dismiss stage.  *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (hereinafter "*Aatrix I*"). However, "plausible factual allegations may preclude dismissing a case under § 101 where, for example, nothing on the record . . . refutes those allegations as a matter of law or justifies dismissal under rule 12(b)(6)."  *Aatrix I*, 882 F.3d at 1125 (alterations and internal quotations omitted) (quoting *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F. 3d 1089, 1097 (Fed. Cir. 2016)).  If there are claim construction disputes at this stage, the court must either adopt the non-moving party's constructions or "resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction."  *Id.* (citing *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014); *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016)).  As explained below, the court finds that there are no claim construction disputes that need to be resolved before conducting the § 101 analysis here.

In determining section 101 eligibility, the court need not "parse each individual claim," rather, analyzing a patent's representative claim is sufficient. *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *10 n.3 (C.D. Cal. Oct. 28, 2014) (citations omitted).  Here, Defendants assert that Claim 1 may be treated as representative because the dependent claims add trivial, non-technical imitations, and system claim 13 mirrors the limitations of method Claim 1.  (Doc. 47, p. 16, n.1.)  As Plaintiff does not contest this assertion, the court will treat Claim 1 as representative.

In *Alice*, the Supreme Court reaffirmed the framework set forth in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 573 U.S. at 217.  The court must first determine "whether the claims at issue are directed to one of those patent-ineligible concepts."  *Id.*  If so, the court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79.)

### 1. *Alice* Step One

"The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable.'" *Alice*, 573 U.S. at 218 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). While the Federal Circuit has not established "a definitive rule to determine what constitutes an abstract idea," it has "held claims ineligible as directed to an abstract idea when they merely collect electronic information, display information, or embody mental processes that could be performed by humans." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1346–47 (Fed. Cir. 2017). Courts have found it instructive to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Axcess Int'l, Inc. v. Genetec (USA) Inc.*, 375 F. Supp. 3d 533, 537 (D. Del. 2019) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016)). However, courts "must be careful to avoid oversimplifying the claims because 'at some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* (alterations omitted) (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)).

Claim 1 describes a "method for eliminating contraband in postal mail for one or more remote correctional facilities," which includes identifying specific characteristics of the postal mail, screening it for contraband, scanning the sender and content information, generating a text-readable version of the electronic copy

to be stored electronically in a database, and associating a contraband flag that can deny the inmate access.  (Doc. 1-2, p. 27.)

Defendants argue that the '617 Patent fails *Alice* step one because it patents an ineligible method of organizing human activity—"receiving, sorting, reviewing, logging, screening, and distributing inmate postal mail—using generic computer components like scanners, terminals, servers, and kiosks and generic computer processes like generating text-searchable documents and tagging electronic files." (Doc. 47, p. 6.)  Defendants note that the specification admits that postal mail is a federal right for inmates in correctional facilities and the facilities have therefore been manually receiving, sorting, reviewing, logging, screening, and distributing inmate mail for years.  (*Id.*, at 17.)  Thus, "the purported invention is simply to computerize a process that, as the specification admits, correctional facilities have carried out manually for years."  (*Id.*, at 6.)  Defendants contend that the claims in the '617 Patent merely recite an automated version of these longstanding human practices and it is therefore not patent-eligible.  (*Id.*, at 17.)

Defendants cite several cases they believe to be analogous to the case at hand, in which the asserted patents at issue were found to be directed to abstract ideas.  Where a claim was "directed to the use of persistent identifiers to implement targeted marketing," the Federal Circuit held that the claim was directed to an abstract idea because targeted marketing "is a fundamental practice

that dates back to newspaper advertisements." *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887 (Fed. Cir. 2019). The Federal Circuit also held that claims directed to "using a marking affixed to the outside of a mail object to communicate information about the mail object, *i.e.*, the sender, recipient, and contents of the mail object" were directed to an abstract idea. *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F. 3d 905, 911 (Fed. Cir. 2017). Defendants argue that the claims at issue here are likewise fundamental practices.

Additionally, Defendants specifically point to numerous cases in which courts have held that if a patent's claims merely automate manual processes, they are directed to abstract ideas. *See Ericcsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (holding that processes at issue were "exactly the sort of process that can be performed in the human mind, or by a human using a pen and paper, which we have repeatedly found unpatentable"); *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) (holding that in *Alice* step one, "it is often helpful to ask whether the claims are directed to an improvement in the functioning of a computer, or merely adding conventional computer component to well-known business practices," with the latter being abstract) (quoting *Enfish*, 822 F.3d at 1338); *Secured Mail*, 873 F.3d at 910 (where the claims stated various identifiers affixed to a mail object, stored in a database, scanned from the mail object, and retrieved from the database, but "[n]o

special rules or details of the computers, databases, printers, or scanners [were]

recited," the court held that the claims were directed to an abstract idea); *Versata*

*Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1303, 1335 (Fed. Cir. 2015) (holding

that claims employing a computer to "improve the performance of [price]

determination" but that did not "improv[e] computer performance" were not

patent-eligible); *Ficep Corp. v. Peddinghause Corp.*, 2021 WL 254104, at *2 (D.

Del. Jan. 26, 2021) (although the asserted patent was found to be patent-eligible,

the court stated that "if a claim simply takes . . . something that humans have done

for a long time [] and does nothing more than make use of a generic computer to

perform [it] faster or more accurately . . . then the claim is ineligible").

Smart Communications first notes that issued U.S. patents are presumed

valid pursuant to 35 U.S.C. § 282(a).  (Doc. 55, p. 5.)  This presumption creates a

heightened burden for infringers, who must prove invalidity by clear and

convincing evidence.  (*Id.*)  Smart Communications also argues there has not yet

been a claim construction hearing and that "[t]he analysis of whether claims recite

patent-eligible subject matter requires a complete understanding of what the claims

mean."  (*Id.*, at 12–14.)  Smart Communications then asserts that the claims of the

'617 Patent are anything but fundamental, and that they describe specific systems

and methods for eliminating contraband transmitted through the mail at

correctional facilities.  (*Id.*, at 14–21.)

In arguing that the claims at issue here are not fundamental, Smart Communications first cites case law emphasizing that the claims of the asserted patent must be taken as a whole, rather than individually. *Cardionet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020). Then, Smart Communications points to several cases in which the claims of the asserted patents focus on a specific means or method that improves longstanding issues, and the asserted patents were found to be patent-eligible. *Cardionet*, 955 F.3d at 1368 (in beginning the *Alice* step one analysis, the court "look[ed] to whether the claims focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is an abstract idea and merely invoke generic processes and machinery") (quoting *McRO, Inc., v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). Smart Communications urges the court to deny Defendants' motion because utilizing technology to make improvements to the underlying process remains patentable. (Doc. 55, pp. 21–23.)

In their reply brief, Defendants argue that no deference is owed to the Patent Office examiner's determination regarding the validity of the patent, as that is already captured in the statutory presumption of validity, which is rebuttable. (Doc. 58, p. 18.) In response to the arguments relating to claim construction, Defendants assert that claim construction is not necessary before determining patent invalidity, particularly where Smart Communications has not specified any

15

claim term or phrase that needs to be construed before determining patent eligibility.  (*Id.*, at 16–17.)

First, despite Smart Communications' arguments to the contrary, the court notes that claim construction is not necessary prior to determining patent eligibility.  *See Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1187 (Fed. Cir. 2020).  This is particularly so where the patentee does not explain how it might benefit from a particular term's construction under an *Alice* analysis.  *Simio, LLC v. Flexsim Software Prods.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).  Because Smart Communications only generally argued that any eligibility analysis should not occur until after claim construction, but has not indicated which term(s) require construction before the court can undertake such analysis, the court finds no reason to defer ruling on patent eligibility until after claim construction.[3]

As to the rebuttable presumption that the patent is valid, it is notable that the patent application was initially rejected, as the Examiner found that the claims "describe[d] an abstract idea of collecting, analyzing, and displaying data/content"

---

[3] While the court's determination here is based on relevant case law from the Federal Circuit, the court also notes that prior to the instant motion being filed, Smart Communications completed claim construction briefing in a case in Tennessee alleging infringement of the same patent and asserted that no term required construction.  *See HLFIP Holding, Inc. v. Rutherford Cnty., Tenn.*, No. 3:19-cv-714 (M.D. Tenn) at Doc. 172.  Furthermore, after the instant motion was fully briefed, the parties here completed claim construction briefing and Smart Communications likewise asserted that no term required construction.  (Doc. 80.)  Thus, Smart Communications has failed at several junctures to assert any specific terms that require construction.

and that while the claims "recite[d] some additional elements such as 'associating a contraband flag,' 'presenting electronic copy for staff review,' and 'logging the date of receipt of the electronic copy,'" these elements did not alter the analysis because they were simply "[g]eneric computer components recited as performing generic computer functions." (Doc. 47-2, pp. 3–4.) The claims were amended and limitations were added indicating that a "text-readable" electronic copy would be created, the main may be intended for "one or more remote correctional facilities," and language relating to "access flags" and "identifiers" was added. (Docs. 47-3 & 47-4.) The Examiner allowed these amended claims but there was no analysis or explanation of how the additional claims overcame the abstractness or conventionality issues. (Doc. 47-5.) In this instance, the court cannot defer to the Examiner's rationale because no explanation or rationale was provided. The court recognizes the statutory presumption of validity, but finds that the presumption has been rebutted in this case.

An examination of the text of the '617 Patent claims reveals a series of steps that describe an abstract idea—namely, identifying characteristics of postal mail (such as the recipient-inmate, the inmate's institution, the sender, etc.), screening it for contraband, scanning the sender and content information, generating a text-readable version of the electronic copy to be stored electronically, and associating a contraband flag that can deny the inmate access. These steps are analogous to

the steps of "collecting data," "recognizing certain data within the collected data set," and "storing that recognized data in memory" that the Federal Court found to be abstract in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). *See also Return Mail, Inc.*, 2022 U.S. Claims LEXIS 567, at *20. This is true whether looking at the claim limitations individually or collectively as a whole.

Additionally, contrary to Smart Communications' assertion, the claim does not escape abstractness because it is directed to a specific method that improves a longstanding issue. Rather, by Smart Communications' own admission, there have been manual systems in place to combat this "longstanding issue" for many years. Smart Communications has not explained any claim limitations that involve a process not previously being conducted manually.

The '617 Patent is substantially different in this respect from patents that have been found eligible. In *McRO*, for example, the asserted patent involved a process that improved computer animation by using a process *different* from the prior-art techniques employed manually. *McRO*, 837 F.3d at 1314 (emphasis added). Where the asserted patent was an "unconventional technological solution" that achieved an improvement in computer functionality, the court held that the patent was valid. *Amdocs (Isr.) Ltd. V. Openet Telecom, Inc.*, 841 F.3d 1288,

1300–01 (Fed. Cir. 2016).  In *CardioNet*, the cardiac-monitoring system used new techniques that doctors were not previously using.  *CardioNet*, 955 F.3d at 1370.

Conversely, where the asserted patent involves claims describing the sort of process that could be performed in the human mind or by a human using a pen and paper, they are not patentable.  *Ericsson*, 955 F.3d at 1327.  In *Affinity Labs*, for example, the asserted patent was ineligible because the claims were adding conventional computer components to well-known business practices rather than an actual improvement.  *Affinity Labs*, 838 F.3d at 1270.   Courts have repeatedly held that if a claim takes an abstract idea—something that humans have done for a long time–and does nothing more than make use of a generic computer to perform that task faster or more accurately than a human could, then the claim is ineligible. *Ficep Corp.*, 2021 U.S. Dist. LEXIS 15881, at *6; *McRO*, 837 F.3d at 1314.

It is evident that the claim limitations here recite the conventional, historically manual method of processing inmate mail, screening it for contraband, and distributing it to inmates.  While the '617 Patent may improve the speed and accuracy of recordkeeping and recognizing trends with inmate mail over time, there is nothing in the record before the court that the '617 Patent does anything more than perform this task faster and more accurately than humans have been doing for years.  Accordingly, reviewing the limitations in claim 1 individually and as a whole, the parties' competing characterizations, and comparing claim 1 to

claims in previous cases, the court concludes that claim 1 is directed to an abstract idea within the meaning of *Alice* step one.

### 2. *Alice* Step Two

In evaluating *Alice* step two, courts must look for an "inventive concept" by analyzing "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79). The additional features or elements must ensure "that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72, 79). Furthermore, the patent-eligible application requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* (quoting *Mayo*, 566 U.S. at 72).

However, "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *Aatrix I*, 882 F.3d at 1126–27 (citing *BASCOM Glob. Internet Servs., Inc.*, 827 F.3d at 1352). "[P]lausible factual allegations may preclude dismissing a case under § 101 where, for example, nothing in the record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6)." *Id.* (internal quotations and citations omitted) (quoting *FairWarning IP, LLC*, 839 F.3d at 1097). "Whether a claim element or combination of elements would have been well-understood, routine,

and conventional to a skilled artisan in the relevant field at a particular point in time may require weighing evidence, making credibility judgments, and addressing narrow facts that utterly resist generalization." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1355 (Fed. Cir. 2018) (hereinafter "*Aatrix II*") (alterations and quotations omitted) (quoting *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. The Village at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018)).  On the other hand, "[i]f the specification admitted that the claim elements are well-understood, routine, and conventional, it would be nearly impossible for a patentee to show a genuine dispute." *Id.* at 1356.

Defendants argue that the claims do not contain an inventive concept, whether considered individually or as an ordered combination, because they simply implement the ineligible concept using generic computer components and techniques.  (Doc. 47, pp. 22–24.)  They present similar arguments as they presented for step one.  (*Id.*)

Smart Communications' response in opposition focuses primarily on a lack of complete preemption.  (Doc. 55, pp. 23–27.)  Smart Communications asserts that if the court finds at step one that the '617 Patent is directed to an abstract idea, that the court should nonetheless find the remainder of the claim, taken as a whole, limits the claim to a specific implementation of that idea, presenting no danger of broadly pre-empting the distribution of mail to inmates at correctional facilities.

(*Id.*, at 23–24.)  Smart Communications argues that, pursuant to *Alice*, claims presenting no risk of preempting the use of underlying abstract ideas remain eligible for patent protection.  (*Id.*, at 24.)

In their reply brief, Defendants acknowledge that the claims in the '617 Patent are specific in that they do not cover *all* possible methods of processing and distributing inmate mail, but assert that specificity or the absence of complete preemption does not equal eligibility.  (Doc. 58, pp. 14–15.)  Citing Federal Circuit cases, Defendants contend that preemption may signal patent ineligible subject matter, but the absence of complete preemption does not demonstrate patent eligibility.  (*Id.*, at 14) (citing *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015)).  Additionally, Defendants argue that the mere fact that the '617 Patent is directed to solving problems specific to correctional facilities is not sufficient to make the '617 Patent eligible.  (*Id.*, at 14) (citing *Alice*, 573 U.S. at 222).

It is notable that Smart Communications does not make any specific allegation that the '617 Patent contains an inventive concept.  The crux of the *Alice* step two analysis is whether there exists an inventive concept such that the application of the asserted patent is significantly more than the abstract idea the claims are directed to.  Here, however, Defendants have argued that because the claims do nothing more than use generic computers to automate historically

22

manual processes, there is no inventive concept present.  In response, Smart

Communications summarily states that "[t]he limitations, as part of the methods

and systems claimed as a whole, provide an inventive concept that solves identified

problems in the underlying art and, importantly, does not risk pre-empting other

methods and systems of delivering inmate mail."  (Doc. 55, p. 26.)  What is

missing, however, is any explanation of *how* any of the claim limitations represent

a new or useful application.

The limitations of the '617 patent claims were well-known and conventional

at the time of the patent application, including the additional claims Smart

Communications added in order to overcome the initial denial of the patent

application: creating text-readable versions of the scanned mail; utilizing flags and

identifiers; and providing that the mail may be sent to a central facility for

distribution to one or more remote correctional facilities.  It is apparent that

creating a text-readable electronic copy of a document is known and conventional.

*See Context Extraction*, 776 F.3d at 1345 (holding that using a scanner or other

digitizing device to extract data from a document is not inventive).  Likewise,

flagging items and using identifiers are not inventive.  *See Intellectual Ventures I*

*LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) (holding that using

identifiers and categorizing electronic data is a generic computer function).

Finally, performing the same task at a central location with conventional computer

components is insufficient to state a transformative inventive concept.  *See In re Rosenberg*, 813 Fed. App'x 594, 598–99 (Fed. Cir. 2020).

To restate known, conventional steps, but doing so on a computer, is insufficient to transform the claims—otherwise directed to an abstract idea—into an inventive application.  *See, e.g., Alice*, 573 U.S. at 225 (holding that claims failed to "do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer" where "each step of the process [was] purely conventional" individually and as an ordered combination) (internal quotations omitted).

Additionally, Smart Communications' claims that the '617 Patent claims are eligible because they are specific and limited to solving longstanding problems within correctional facilities are unavailing.  Limiting the use of an abstract idea to a particular technological environment is not sufficient.  *buySafe, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (citing *Alice*, 573 U.S. at 22–24).  Because the claims are directed to the abstract idea of identifying characteristics of postal mail, screening it for contraband, scanning the sender and content information, generating a text-readable version of the electronic copy to be stored electronically, and associating a contraband flag that can deny the inmate access, and because there is no genuine dispute of material fact that those claims fail to

offer any kind of new application of that idea, the court holds that the disputed patent is patent-ineligible under 35 U.S.C. § 101.

CONCLUSION

For the reasons stated herein, the court will grant Defendants' motion for judgment on the pleadings.  Because the court finds that the '617 patent is invalid, count 2 of the complaint and the counterclaims asserted in the second amended answer, Doc. 131, are moot.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 25, 2022